# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

In re HYPODERMIC PRODUCTS
ANTITRUST LITIGATION

**Master Docket No. 05-CV-1602 (JLL)**
**MDL No. 1730**

**Hon. Jose L. Linares, U.S.D.J.**
**Hon. Ronald J. Hedges, U.S.M.J.**

JABO'S PHARMACY, INC., and
DRUG MART TALLMAN, INC.,

              Plaintiffs,

    v.

BECTON DICKINSON & COMPANY,

              Defendant.

---

## MEMORANDUM OF BECTON DICKINSON & COMPANY
## IN SUPPORT OF ITS MOTION TO DISMISS THE
## CONSOLIDATED COMPLAINT

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 373-3000

On the Brief and Of Counsel:

    Theodore V. Wells, Jr.
    Moses Silverman
    Robert A. Atkins
    Gregory B. Reilly
    Deborah A. Silodor

LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, NJ  07068
(973) 597-2500

Attorneys for Defendant

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES......................................................................................iii

PRELIMINARY STATEMENT .............................................................................. 1

THE COMPLAINT ................................................................................................. 4

ARGUMENT ........................................................................................................... 8

I. THE COMPLAINT SHOULD BE DISMISSED BECAUSE
    PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THE
    ESSENTIAL ELEMENTS OR NECESSARY FACTS OF ANY
    ANTITRUST CLAIM....................................................................................... 9

II. THE CLAYTON ACT CLAIM SHOULD BE DISMISSED BECAUSE
    THE PLAINTIFFS LACK STANDING TO ASSERT THIS CLAIM........ 18

III. PLAINTIFFS' "DIRECT" PURCHASER CLAIMS UNDER THE
    FEDERAL ANTITRUST LAWS SHOULD BE DISMISSED ................... 20

IV. PLAINTIFFS' "INDIRECT" PURCHASER CLAIMS SHOULD BE
    DISMISSED BECAUSE PLAINTIFFS HAVE NOT ALLEGED THE
    ESSENTIAL ELEMENTS  OF AN ANTITRUST CLAIM UNDER
    ANY STATE LAW.......................................................................................... 22

V. PLAINTIFFS' OTHER STATE LAW CLAIMS SHOULD BE
    DISMISSED AS THEY LACK STANDING TO BRING THOSE
    CLAIMS.......................................................................................................... 24

VI. CERTAIN STATE CLAIMS SHOULD BE DISMISSED AS THEY
    FAIL AS A MATTER OF LAW ................................................................... 27

    A.    The New York Antitrust and Consumer Protection Claims Must
        Be Dismissed As Plaintiffs Fail To State a Cause of Action ............. 27

    B.    Plaintiffs' Massachusetts Claims Fail Because Massachusetts
        Does Not Recognize Indirect Purchaser Actions Under 93A
        § 11....................................................................................................... 29

i

C.    Plaintiffs' Montana Claims Must Be Dismissed as There Is No Cause of Action for Indirect Purchasers .............................................. 30

D.    Plaintiffs' Alabama, District of Columbia, Mississippi, Nevada, South Dakota and West Virginia Claims Must Be Dismissed as These Statutes Regulate Intrastate Commerce ................................... 31

E.    Plaintiffs' Hawaii Claims Must be Dismissed as Plaintiffs Failed to Follow Mandated Procedures for Filing Such a Claim ....... 33

F.    Plaintiffs' Utah, Nebraska and Hawaii Claims Fail for the Time Before Those States Recognized Indirect Purchaser Actions ........... 34

G.    Plaintiffs' Alabama, Kansas and Tennessee Claims Fail As Those States Do Not Provide A Cause of  Action For Attempted Monopolization ................................................................. 35

VII. PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT MUST BE DISMISSED ........................................................................................... 36

CONCLUSION ........................................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A & M Supply Co.* v. *Microsoft Corp.*,
654 N.W.2d 572 (Mich. Ct. App. 2002) ....................................................... 23

*Abbott Labs.* v. *Durrett,* 746 So. 2d 316 (Ala. 1999).............................................. 31

*Allen* v. *Wright,* 468 U.S. 737 (1984).................................................................... 24

*Archer Daniels Midland Co.* v. *Seven Up Bottling Co. of Jasper,*
746 So. 2d 966 (Ala. 1999) ....................................................................... 31, 32

*Asher* v. *Abbott Labs.*, 737 N.Y.S.2d 4 (1st Dep't 2002) ................................. 27, 28

*Associated Gen. Contractors of Cal., Inc.* v. *Cal. State Council of
Carpenters,* 459 U.S. 519 (1983) ....................................................... 10, 17, 18

*Banco Espirito Santo de Investimento, S.A.* v. *Citibank, N.A.,*
2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003).............................................. 37

*Bergstrom* v. *Noah,* 974 P.2d 520 (Kan. 1999) ....................................................... 35

*Boos* v. *Abbott Labs.*, 925 F. Supp. 49 (D. Mass. 1996) ......................................... 29

*Brixen & Christopher Architects, P.C.* v. *State,*
29 P.3d 650 (Utah Ct. App. 2001)................................................................ 22

*Brown Shoe Co.* v. *United States,* 370 U.S. 294 (1962).......................................... 12

*Brown* v. *Sibley,* 650 F.2d 760 (5th Cir. 1981)....................................................... 25

*Bunker's Glass Co.* v. *Pilkington, PLC,* 75 P.3d 99 (Ariz. 2003)............................ 34

*In re Buspirone Antitrust Litig.,* 185 F. Supp. 2d 363 (S.D.N.Y. 2002) ................. 26

*City of Pittsburgh* v. *West Penn Power Co.,* 147 F.3d 256 (3d Cir. 1998) ............. 17

*Cox* v. *Microsoft Corp.*, 737 N.Y.S.2d 1 (1st Dep't 2002) ............................... 27, 28

*Cox* v. *Microsoft Corp.*, 778 N.Y.S.2d 147 (1st Dep't 2004) ................................... 37

*Crane & Shovel Sales Corp.* v. *Bucyrus-Erie Co.*,
    854 F.2d 802 (6th Cir. 1988) ............................................................................ 9

*E. & G. Gabriel* v. *Gabriel Bros., Inc.*,
    1994 WL 369147 (S.D.N.Y. July 13, 1994) ........................................... 12-13

*Fed. Trade Comm'n* v. *Mylan Labs., Inc.*,
    62 F. Supp. 2d 25 (D.D.C. 1999) .......................................................... 34, 36

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
    2001 WL 1266317 (D.N.J. Sept. 30, 1997) ........................................... 29, 32

*Freeman Indus., LLC* v. *Eastman Chem. Co.*,
    172 S.W.3d 512 (Tenn. 2005) ...................................................................... 38

*Garshman* v. *Universal Res. Holding, Inc.*,
    625 F. Supp. 737 (D.N.J. 1986) .................................................................. 11

*Garshman* v. *Universal Res. Holding, Inc.*,
    824 F.2d 223 (3d Cir. 1987) ....................................................................... 18

*Gladstone Realtors* v. *Vill. of Bellwood*, 441 U.S. 91 (1979) ................................... 25

*Goebel* v. *Salt Lake City S. R.R. Co.*, 104 P.3d 1185 (Utah 2004) .......................... 34

*Goshen* v. *Mut. Life Ins. Co. of N.Y.*,
    774 N.E.2d 1190 (N.Y. 2002) .................................................................... 28

*Griffin* v. *Dugger*, 823 F.2d 1476 (11th Cir. 1987) ............................................ 25, 26

*Griffiths* v. *Blue Cross & Blue Shield of Ala.*,
    147 F. Supp. 2d 1203 (N.D. Ala. 2001) ..................................................... 31

*Hindman* v. *Microsoft Corp.*,
    88 P.3d 1209, 2004 WL 928283 (Haw. Apr. 30, 2004) ................................. 35

iv

*In re Iams Co. Litig.,* 1992 WL 1258515 (S.D. Ohio July 23, 1992)...................... 19

*Illinois Brick* v. *Illinois,* 431 U.S. 720 (1977) ........................................ 20, 23, 30, 34

*JM Computer Servs., Inc.* v. *Schlumberger Techs., Inc.,*
    1996 WL 241607 (N.D. Cal. May 3, 1996) .................................................... 15

*In re Jetblue Airways Corp. Privacy Litig.,*
    379 F. Supp. 2d 299 (E.D.N.Y. 2005)........................................................... 37

*Kauffman* v. *Dreyfus Fund, Inc.,* 434 F.2d 727 (3d Cir. 1970) ................... 19, 22, 25

*Kuwaiti Danish Computer Co.* v. *Digital Equip. Corp.,*
    781 N.E.2d 787 (Mass. 2003) ....................................................................... 30

*Leider* v. *Ralfe,* 387 F. Supp. 2d 283 (S.D.N.Y. 2005) ............................... 27, 28, 29

*Lewis* v. *Casey,* 518 U.S. 343 (1996) ................................................. 19, 21-22, 25, 26

*Lombard's, Inc.* v. *Prince Mfg., Inc.,* 753 F.2d 974 (11th Cir. 1985)..................... 18

*Lujan* v. *Defenders of Wildlife,* 504 U.S. 555 (1992)............................................. 24

*McPherson's, Ltd.* v. *Never Dull, Inc.,*
    1990 WL 238812 (D.N.J. Dec. 26, 1990) ...................................................... 15

*Melnick* v. *Microsoft Corp.,*
    2001 WL 1012261 (Me. Super. Aug. 24, 2001) ........................................... 23

*In re Methionine Antitrust Litig.,* 204 F.R.D. 161 (N.D. Cal. 2001)....................... 23

*In re Microsoft Corp. Antitrust Litig.,*
    2003 WL 22070561 (D. Md. Aug. 22, 2003)............................................31-32

*In re Motel 6 Sec. Litig.,* 1997 WL 154011 (S.D.N.Y. Apr. 2, 1997).................... 37

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.,*
    350 F. Supp. 2d 160 (D. Me. 2004).............................................................. 36

*Paltre* v. *Gen. Motors Corp.*, 810 N.Y.S.2d 496 (2d Dep't 2006) ................... 27, 28

*Queen City Pizza, Inc.* v. *Domino's Pizza, Inc.*,
  124 F.3d 430 (3d Cir. 1997) ..................................................................... 12, 13

*Rapaport* v. *U.S. Dept. of Treasury, Office of Thrift Supervision*,
  59 F.3d 212 (D.C. Cir. 1995) .......................................................................... 37

*Redtail Leasing, Inc.* v. *Bellezza*,
  1997 WL 603496 (S.D.N.Y. Sept. 30, 1997) .................................................. 37

*In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004) ............................. 26

*Ritter, Laber and Assocs., Inc.* v. *Koch Oil, Inc.*,
  680 N.W.2d 634 (N.D. 2004) ......................................................................... 36

*Romero* v. *Philip Morris Inc.*, 109 P.2d 768 (N.M. Ct. App. 2005) ....................... 22

*Sadler* v. *Rexair, Inc.*, 612 F. Supp. 491 (D. Mont. 1985) ....................................... 30

*Schuylkill Energy Res., Inc.* v. *Pa. Power & Light Co.*,
  113 F.3d 405 (3d Cir. 1997) ..................................................................... 11, 16

*Sherwood* v. *Microsoft Corp.*,
  2003 WL 21780975 (Tenn. Ct. App. Aug. 2, 2004) ...................................... 26

*Smith* v. *Video Lottery Consultants*, 858 P.2d 11 (Mont. 1993) ............................. 30

*Southard* v. *Visa U.S.A. Inc.*,
  2004 WL 3030028 (Iowa D.C. Nov. 17, 2004) ............................................. 22

*S. Concrete Co.* v. *U. S. Steel Corp.*, 535 F.2d 313 (5th Cir. 1976) ........................ 19

*Spectrum Sports, Inc.* v. *McQuillan*, 506 U.S. 447 (1993) ..................................... 11

*Sperry* v. *Crompton Corp.*, 810 N.Y.S.2d 498 (2d Dep't 2006) ............................. 37

*Standard Oil Co. of Ky.* v. *State ex rel. Attorney Gen.*,
  65 So. 468 (Miss. 1914) .................................................................................. 32

*In re Starlink Corn Prods. Liab. Litig.,*
    212 F. Supp. 2d 828 (N.D. Ill. 2002) .............................................................. 25

*Steamfitters Local Union No. 420 Welfare Fund* v. *Philip Morris, Inc.,*
    171 F.3d 912 (3d Cir. 1991) .......................................................................... 17

*Stutman* v. *Chem. Bank,* 731 N.E.2d 608 (N.Y. 2000) ........................................... 29

*Sun Dun, Inc. of Wash.* v. *Coca-Cola Co.,*
    740 F. Supp. 381 (D. Md. 1990) ............................................................... 31, 32

*Sutliff, Inc.* v. *Donovan Cos.,* 727 F.2d 648 (7th Cir. 1984) ................................... 10

*Syncsort, Inc.* v. *Sequential Software, Inc.,*
    50 F. Supp. 2d 318 (D.N.J. 1999) ............................................................ 12, 13

*Tackitt* v. *Visa U.S.A., Inc.,*
    2004 WL 2475281 (Neb. Dist. Ct. Oct. 14, 2004) ......................................... 34

*Tampa Elec. Co.* v. *Nashville Coal Co.,* 365 U.S. 320 (1961) ........................... 12, 19

*In re Terazosin Hydrochloride Antitrust Litig.,*
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) ..................................................... 25, 26

*Theatre Party Assocs., Inc.* v. *Shubert Org., Inc.,*
    695 F. Supp. 150 (S.D.N.Y. 1988) ................................................................ 13

*Thomas* v. *Amerada Hess Corp.,* 393 F. Supp. 58 (M.D. Pa. 1975) ....................... 19

*USF & G Ins. Co. of Miss.* v. *Walls,* 911 So. 2d 463 (Miss. 2005) ......................... 32

*United States* v. *Eastman Kodak Co.,* 63 F.3d 95 (2d Cir. 1995) ........................... 12

*United States* v. *Employing Plasterers Ass'n,* 347 U.S. 186 (1954) ......................... 9

*United States* v. *Grinnell Corp.,* 384 U.S. 563 (1966) ........................................... 11

*Vinci* v. *Waste Mgmt., Inc.,* 80 F.3d 1372 (9th Cir. 1996) ..................................... 11

*Warner Lambert Co.* v. *Purepac Pharm. Co.,*
   2000 WL 34213890 (D.N.J. Dec. 22, 2000) ...............................................9-10

*Warth* v. *Seldin,* 422 U.S. 490 (1975) ......................................... 19, 22, 25

*Wilson* v. *Gen. Motors Corp.,*
   2006 WL 1767754 (N.J. Super. Ct. App. Div. June 29, 2006).................... 33

## STATUTES

28 U.S.C. § 1407.................................................................................... 4

Needlestick Safety and Prevention Act,
   Pub. L. No. 106-430, 144 Stat. 1901 (2000) .................................... 8

U.S. Const., art III, § 2........................................................................ 24

Ala. Code § 6-5-60 (2005) ............................................................. 31, 35

D.C. Code § 28-4501 (2006) ............................................................... 31

Haw. Rev. Stat. § 480-13.3 (2005)...................................................... 33

Haw. Rev. Stat. Ann. § 480-2 (LexisNexis 2004) ................................ 35

Haw. Rev. Stat. Ann. § 480-13 (LexisNexis 2004) ............................... 35

Haw. Rev. Stat. Ann. § 480-13.3 (LexisNexis 2004) ............................ 35

Iowa Code § 553.2 (2006) .................................................................. 22

Kan. Stat. Ann. § 50-101 *et seq.* ....................................................... 35, 36

Mass. Gen. Laws. Ann. ch. 93A § 11 (West 2006)............................29-30

Mich. Comp. Laws Ann. § 445.784 (2006) .......................................... 22

Miss. Code Ann. § 75-21-9 (West 2006) ............................................. 31

Miss. Code Ann. § 75-24-15 (West 2006) ........................................... 32

Mont. Code Ann. § 30-14-222 (2005) ....................................................... 30

N.J. Stat. Ann. § 56:9-18 (West 2006) ..................................................... 33

Neb. Rev. Stat. Ann. § 59-821 (LexisNexis 2005).................................... 34

Nev. Rev. Stat. § 598A.050 (2005) ......................................................... 22

Nev. Rev. Stat. § 598A.060 (2005) ......................................................... 31

N.M. Stat. § 57-1-15 (2006) .................................................................. 22

N.Y. C.P.L.R. § 901 (McKinney 2005) ................................................... 27

N.Y. Gen. Bus. Law § 349 (McKinney 2006)......................................28-29

S. D. Codified Laws § 37-1-3.1 (2006) ................................................... 31

Tenn. Code Ann. § 47-25-101 *et seq.* ...................................................... 35

Utah Code Ann. § 76-10-919 (West 2005) .............................................. 34

Utah Code Ann. § 76-10-926 (West 2005) .............................................. 22

W. Va. Code § 47-18-3 (2006) ............................................................... 31

W. Va. Code § 47-18-16 (2006) .............................................................. 22

## SESSION LAWS

2001 Nev. Stat. ch. 63, § 2...................................................................... 31

2006 Utah Laws Ch. 19 (S.B. 16)............................................................. 34

Defendant Becton Dickinson & Company ("Becton") respectfully submits this memorandum of law in support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Consolidated Complaint (the "Complaint").

## PRELIMINARY STATEMENT

This action seeks to break the mold.  For years, pharmacies claiming to have been overcharged for their medical supplies, like the two plaintiffs in this case, sued only under *state* antitrust laws.  That is because plaintiffs buy their medical supplies from distributors who, in turn, buy those supplies from the manufacturers.  Such "indirect" purchasers typically do not claim to have standing under the *federal* antitrust laws since those laws are reserved for the so-called "direct" purchasers.

These plaintiffs are different.  Drug Mart and Jabo assert claims under federal antitrust law, alleging that Becton violated the Sherman Act by excluding competition in an assortment of product markets and charging inflated prices.  Only in the alternative do they assert claims under state law.  Plaintiffs contend that they have federal standing as the real "direct" purchasers because the distributors, from whom they buy Becton products, function merely as delivery services.

The problem here, among many, is that the distributors allege just the opposite.  In the parallel case before the Court (*Louisiana Wholesale Drug, et al.* v. *Becton*), the distributors claim that they -- and only they -- are the real "direct" purchasers of Becton products under federal law.  According to them, the plaintiffs in this action can only sue Becton under state law.  Therefore, the Court and Becton face conflicting complaints that assert the same federal antitrust claims, for the same sales of Becton products, based on the same factual allegations.

The Court need not, however, untangle this mess because plaintiffs have failed to adequately allege any claim under either federal or state law.  Indeed, since the Complaint here is based on the same factual allegations as the parallel action, it suffers from all the same pleading defects under federal law, plus an array of other deficiencies under the various state laws:

First, the Complaint fails to allege what Becton did in which particular product market.  Plaintiffs allege at least four different relevant markets, yet they don't allege what Becton did with respect to which of the different product markets, what happened to competition in which market, or which competitors were excluded from which markets.  All the Complaint offers are generic allegations and vague generalities that make it impossible to determine if plaintiffs have standing to sue on *any* claims.  In fact, the Complaint never alleges what

Becton products plaintiffs actually buy.  The Complaint fails to state a viable claim under the Sherman Act, or any other antitrust act.

Second, whatever the legal merits of their theory of standing under federal antitrust law, these two plaintiffs have not alleged the facts that would entitle them to sue under that theory.  The factual premise of plaintiffs' federal standing argument is that certain healthcare providers buy Becton products pursuant to contracts that they or their agents -- the Group Purchasing Organizations or "GPOs" -- negotiate directly with Becton.  The products are then delivered to those purchasers through "authorized" distributors who "have no independent control over pricing for Becton's products" and "act solely as a distribution agent." (Cplt. ¶ 51.)

That is the theory.  Though there may be some who do buy Becton's products in that manner, plaintiffs Drug Mart and Jabo do not.  They don't allege that *they* buy in this manner.  They don't allege that *they* are members of GPOs. They don't allege that *they* buy pursuant to GPO contracts.  And they don't allege that *they* buy through "authorized" distributors.  These omissions are not oversights.  They are an acknowledgment that these plaintiffs cannot allege the facts needed to sustain their standing to assert a federal antitrust claim.

Third, plaintiffs' alternative state law claims are no better.  There are no specific factual allegations about what Becton allegedly did, and how competition

3

supposedly was harmed, in which particular markets.  Moreover, Drug Mart's

claims under New York law and Jabo's claims under Tennessee law are deficient

as a matter of law.  And neither plaintiff has any basis, in law or fact, for asserting

claims under the laws of the twenty-four other states where they don't do business.

In sum, the Complaint fails to state a viable cause of action under any law

and, therefore, should be dismissed in its entirety.

## THE COMPLAINT

The Consolidated Complaint in this case is copied from the pleadings in two

other actions.  One, the complaint in the parallel action, is pending in this Court.

*See Louisiana Wholesale Drug, et al.* v. *Becton* ("LWD") Complaint attached as

Ex. 1 to the Rubin Declaration ("Rubin Decl.").  That complaint, in turn, is based

on the pleading in an action brought against Becton by one of its competitors,

Retractable Technologies, Inc. ("RTI").  As with both those complaints, this

Complaint recounts how Becton, a manufacturer of many different medical

devices, allegedly foreclosed RTI, a rival manufacturer, from selling its products to

hospitals, doctors and other healthcare providers.[1]  (Cplt. ¶ 6.)

---

[1]   A third plaintiff, Medstar Health, Inc. ("Medstar"), filed a complaint alleging
virtually identical factual and legal claims on May 18, 2006 in the District of
Columbia (the "Medstar Action").  However, unlike Drug Mart and Jabo,
Medstar asserts its state claims only under the laws of the District of Columbia.
A copy of the Medstar Action Complaint ("Medstar Complaint") is attached as
Exhibit 2 to the Rubin Decl.  Becton and Medstar requested that the Judicial
Panel on Multidistrict Litigation transfer the Medstar Action to this court
pursuant to 28 U.S.C. § 1407 and a conditional transfer order was entered on

**The Alleged Anti-Competitive Behavior**

Becton is a manufacturer of numerous medical devices, including safety and conventional needles and syringes, IV catheters and blood collection devices. Jabo's Pharmacy, Inc. ("Jabo") and Drug Mart Tallman, Inc. ("Drug Mart") (collectively, "plaintiffs") assert six causes of action against Becton: (Count I) unreasonable restraint of trade in violation of Section 1 of the Sherman Act and Section 3 of the Clayton Act, (Count II) unlawful monopolization in violation of Section 2 of the Sherman Act, (Count III) unlawful attempted monopolization in violation of Section 2 of the Sherman Act, (Count IV) unlawful restraint of trade, exercise of monopoly and/or market power and attempted monopolization in violation of the laws of twenty-six jurisdictions,[2] and (Count V and Count VI) unjust enrichment in violation of the laws of twenty-five jurisdictions.[3]  Each of

---

June 23, 2006.  A copy of that order is attached as Exhibit 3 of the Rubin Decl. The parties expect that the Medstar Action will soon be consolidated with this action under Case Management Orders 5 & 7.  Medstar operates a network of hospitals and healthcare providers.

[2] Count IV: Alabama, Arizona, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Utah, Vermont, West Virginia and Wisconsin.  (Cplt. ¶ 100.)

[3] Count V: claims for unjust enrichment under the state laws of Arizona, District of Columbia, Florida, Hawaii, Iowa, Maine, Massachusetts, Montana, Nebraska, South Dakota, Tennessee, Utah and Vermont.  (Cplt. ¶¶ 106-109.) Count VI: claims for unjust enrichment under the state laws of Alabama, California, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New York, North Carolina, North Dakota, West Virginia and Wisconsin.  (Cplt. ¶¶ 110-113.)

5

plaintiffs' causes of action against Becton arises from actions allegedly taken by Becton to exclude some named competitors (like RTI) and other unnamed companies from competing fairly in what are alleged to be four different product markets that plaintiffs refer to collectively as the "Disposable Hypodermic Products" market.

The Complaint focuses on Becton's contracts and discount programs with Group Purchasing Organizations ("GPOs"), who act as "negotiating agents" for hospitals and other healthcare providers. (Cplt. ¶ 56.) A detailed summary of the allegations related to the GPO contracts can be found in Becton's Memorandum in Support of its Motion to Dismiss the LWD Complaint, attached as Ex. 4 of the Rubin Decl.

The Complaint offers scant information about the named plaintiffs. Drug Mart and Jabo are alleged to be "pharmacies" and each is alleged to have bought "various disposable hypodermic products" indirectly from Becton "through a distributor or wholesaler" and was allegedly "injured thereby." (Cplt. ¶¶ 13, 14.) Nothing is alleged as to what products plaintiffs buy, from what distributors or at what prices. Nor is anything alleged as to how they sell whatever products they do buy, what prices they charge their customers or how they were harmed by Becton's allegedly anti-competitive behavior.

6

## The Alleged Relevant Product Markets

The Complaint alleges that there are four relevant product markets:

(1) disposable syringes and their needles[4]; (2) disposable blood collection tubes;

(3) disposable blood collection tube holders; and (4) IV catheter devices and their

needles.

Despite alleging the existence of four separate and distinct product markets,

the Complaint contains virtually no allegations specific to any of those markets. It

does not allege, for example, what happened in the IV catheter market -- *i.e.*, what

exclusionary conduct Becton supposedly engaged in, or what competitors were

harmed, in *that market*. Instead, the factual allegations refer to some catch-all

market that plaintiffs call the "Disposable Hypodermic Products" market. There is

no such market. It is the pleading equivalent of suing Sony for monopolizing the

"Electronic Products" market without alleging whether the anticompetitive conduct

relates to laptop computers, or digital cameras, or televisions, or MP3 players.

Moreover, even with respect to the four product markets alleged, plaintiffs

have lumped together numerous different products that are not the same, are not

---

[4]   The Complaint fails to distinguish between the market for insulin syringes and
needles -- *i.e.*, those used by self-injecting diabetics -- and the market for
hypodermic syringes and needles used by healthcare providers. Insulin
products are designed differently, are used by a different class of customers,
and are generally sold through different distribution channels. They are in
separate relevant markets (both safety and conventional) from the other
syringes and needles.

substitutes for each other, and are not part of a single product market. Most

obviously, plaintiffs fail to distinguish between "safety" and "non-safety" medical

devices. That is an inexplicable error since the plaintiffs in the parallel action do

make that distinction: "For each of the Hypodermic Products at issue, safety and

non-safety devices are in separate product submarkets for all or part of the class

period." (LWD Cplt. ¶ 36.) RTI, the competitor Becton allegedly excluded, also

alleged that each product market must be "divided into discrete sub-markets"

because, *inter alia*, there are "safety and non-safety" versions. (RTI Cplt. ¶ 23.)

Federal legislation requires healthcare providers to use "safety" devices to the

virtual exclusion of "non-safety" devices. (*Id.* ¶ 23, *see* Cplt. ¶ 28.) *See*

Needlestick Safety and Prevention Act, Pub. L. No. 106-430, 144 Stat. 1901

(2000). Thus, as a matter of federal law, safety and conventional devices are not

interchangeable. Likewise, plaintiffs include insulin syringes used by

self-injecting diabetics with the hypodermic syringes used by doctors in hospitals.

In short, as demonstrated below, plaintiffs have failed to properly allege the most

rudimentary element of their antitrust claims.

## ARGUMENT

Plaintiffs' Complaint is riddled with deficiencies. First, plaintiffs have

failed to plead the basic elements of any antitrust claim (whether federal or state):

relevant market, exclusionary conduct, anticompetitive effects, antitrust injury and

8

standing.  Second, with respect to their claims as "direct" purchasers under federal

antitrust law, plaintiffs have failed to assert any facts to support their own standing

to make such a claim.  Third, plaintiffs' alternative claims as "indirect" purchasers

under state antitrust law do not state a viable cause of action under the laws of

either New York or Tennessee -- the two states plaintiffs allegedly reside in.

Fourth, even if plaintiffs could assert a claim under those states' laws, they do not

have standing to assert antitrust or unjust enrichment claims in the twenty-four

other states where they do not reside or do business.  Fifth, even if plaintiffs could

assert claims in states where they neither reside nor did business, their purported

claims under several of the state statutes pled fail to state a cause of action.  Sixth,

plaintiffs' claims for unjust enrichment fail as a matter of law.

## I.
### THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THE ESSENTIAL ELEMENTS OR NECESSARY FACTS OF ANY ANTITRUST CLAIM

In order to survive a Rule 12(b)(6) motion, antitrust claims must include

allegations covering all of the elements that comprise the theory of liability.  *See,*

*e.g., United States* v. *Employing Plasterers Ass'n*, 347 U.S. 186, 189 (1954);

*Crane & Shovel Sales Corp.* v. *Bucyrus-Erie Co.*, 854 F.2d 802, 805 (6th Cir.

1988).  Although there is no heightened pleading requirement in antitrust actions,

courts do require "reasonable particularity in pleading violations of the federal

antitrust laws." *Warner Lambert Co.* v. *Purepac Pharm. Co.*, 2000 WL 34213890,

9

at *4 (D.N.J. Dec. 22, 2000) (citing *Sutliff, Inc.* v. *Donovan Cos.*, 727 F.2d 648,

654 (7th Cir. 1984)); *see also Associated Gen. Contractors of Cal., Inc.* v. *Cal.*

*State Council of Carpenters*, 459 U.S. 519, 528 n.17 (1983).

The Complaint here does not adequately plead the essential elements of an

antitrust claim.  As a threshold issue, it fails to adequately allege the relevant

markets.  It then compounds this defect by failing to allege the facts particular to

specific products and specific product markets.  Instead, plaintiffs' factual

allegations of Becton's supposedly anti-competitive conduct refer almost entirely

to the meaningless "Disposable Hypodermic Products" market.  (*See, e.g.,* Cplt.

¶¶ 19, 59, 64.)  The Complaint goes on at great length about alleged conspiracies

and exclusionary contracts in the "Disposable Hypodermic Products" market

without specifying the parties to the contracts, and whether the alleged conduct

involved safety syringes or blood collection needles or IV catheter devices, or any

of the other products.

Put another way, it is impossible to tell from the Complaint what products

plaintiffs bought, which specific product market the alleged conduct occurred in, or

which contracts, with what parties in which product market, form the basis of the

alleged violations.  Indeed, the Complaint does not clearly allege whether any of

the conduct that allegedly gives rise to liability occurred in markets the plaintiffs

actually participated in.

10

The Complaint therefore does not establish the elements of any antitrust claim: To state an adequate claim of monopolization under Section 2 of the Sherman Act (Count II), plaintiff must allege defendant's (1) possession of monopoly power in the relevant geographic and product market, and (2) willful acquisition or maintenance of that power as distinguished from a justifiable business decision. *Garshman* v. *Universal Res. Holding, Inc.*, 625 F. Supp. 737, 744 (D.N.J. 1986) (citing *United States* v. *Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)).  Attempted monopolization under Section 2 of the Sherman Act (Count III) requires plaintiff to allege "'(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" *Schuylkill Energy Res., Inc.* v. *Pa. Power & Light Co.*, 113 F.3d 405, 413 (3d Cir. 1997) (citing *Spectrum Sports, Inc.* v. *McQuillan*, 506 U.S. 447, 456 (1993)).  In addition, plaintiff must allege facts sufficient to establish "antitrust injury." *Schuylkill*, 113 F.3d at 413.  Generally, that means the plaintiff must be a participant in the relevant market -- *i.e.*, a competitor or a consumer. *Id.* at 415 (quoting *Vinci* v. *Waste Mgmt., Inc.*, 80 F.3d 1372, 1376 (9th Cir. 1996)).

The elements of a Sherman Act Section 1 violation (Count I) are: "(1) concerted action by the defendants; (2) that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted action

was illegal; and (4) that the plaintiff was injured as a proximate result of the

concerted action." *Queen City Pizza, Inc.* v. *Domino's Pizza, Inc.*, 124 F.3d 430,

442 (3d Cir. 1997). Plaintiffs have not alleged with factual particularity the

essential elements of these claims:

(1)   <u>Regarding The Relevant Market</u>: As a prerequisite to an antitrust

claim, the plaintiff must allege a relevant market in which the anticompetitive

effects of the challenged conduct can be assessed. *See United States* v. *Eastman*

*Kodak Co.*, 63 F.3d 95, 104 (2d Cir. 1995). No antitrust claim can proceed without

an adequate allegation of a relevant market. *Queen City Pizza*, 124 F.3d at 436;

*see Tampa Elec. Co.* v. *Nashville Coal Co.*, 365 U.S. 320, 327-28 (1961).

"Without a definition of the relevant market, there is no way to measure a

company's ability to act as a monopolist." *Eastman Kodak Co.*, 63 F.3d 95 at 104.

The plaintiff "bears the burden of defining the relevant market" in the

pleading. *Syncsort, Inc.* v. *Sequential Software, Inc.*, 50 F. Supp. 2d 318, 331

(D.N.J. 1999). A relevant market is comprised of a market for the specific product

at issue, the market for "reasonably interchangeable products," and a geographic

market in which the sellers compete. *See Brown Shoe Co.* v. *United States*, 370

U.S. 294, 324-25 (1962). An "implausible" market definition will not be sustained

even at the pleading stage. *E. & G. Gabriel* v. *Gabriel Bros., Inc.*, 1994 WL

369147, at *2-3 (S.D.N.Y. July 13, 1994). "[F]ederal courts 'have not hesitated to

reject market allegations that make no economic sense.'" *Id.* (quoting *Theatre Party Assocs., Inc.* v. *Shubert Org., Inc.,* 695 F. Supp. 150, 154 (S.D.N.Y. 1988)).

Thus, this is much more than a pleading technicality. To avoid dismissal, an antitrust plaintiff "must plead facts sufficient to demonstrate a viable relevant market." *Syncsort*, 50 F. Supp. 2d at 327. The Third Circuit has held: "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand . . . the relevant market is legally insufficient." *Queen City Pizza,* 124 F.3d at 436.

Plaintiffs fall far short of that here. All of plaintiffs' myriad allegations about the so-called "Disposable Hypodermic Products" market are meaningless. There is no such market. Plaintiffs concede as much by alleging the existence of four distinct product markets. But even then, the Complaint fails to properly allege the relevant markets. First, plaintiffs combine safety and conventional products without any allegations of the reasonable interchangeability and cross-elasticity of demand. *Id.* Folding these two separate markets into one general market creates an implausible product market. *E. & G. Gabriel*, 1994 WL 369147, at *2-3. Second, plaintiffs' definition of the "IV catheter market" as one that includes "winged IV catheters" is also made without allegations as to whether these products can be interchanged, used to perform the same clinical functions or substituted for each other in medical practice.

13

(2)    Regarding "Exclusive" Contracts and "Exclusionary" Conduct.  The

heart of plaintiffs' monopolization, attempted monopolization and restraint of trade

claims are the allegations of Becton's alleged "exclusionary" contracts, "predatory

sales tactics" and "bundling" practices.  (Cplt. ¶ 71-74.)  There are many

paragraphs and pages making vague allegations about how Becton sought to

"unfairly restrain and limit competition" in the non-existent "Disposable

Hypodermic Products" market (Cplt. ¶ 71), but there are no specific allegations

about what specific contracts, with what specific parties, affected competition in

which specific market.  Plaintiffs instead claim (1) that Becton used "commitment

contracts" to "exclude competition from rival Disposable Hypodermic Product

manufacturers" (Cplt. ¶¶ 59-62), (2) that Becton used "bundling contracts" and

"conversion bonuses and rebates" to foreclose competition from "potential

Disposable Hypodermic Products manufacturers," (Cplt. ¶ 63-70) and (3) that

Becton used "bundled pricing and the offer of other similar financial incentives to

unfairly restrain and limit competition from competing manufacturers of

Disposable Hypodermic Products." (Cplt. ¶ 71-74).  As plaintiffs never once refer

to a specific product, there is no way to determine when plaintiffs are alleging

something about syringes, blood collection tubes, IV catheters or blood collection

tube holders.

Similarly, although plaintiffs repeatedly refer to Becton's allegedly exclusionary contracts and agreements, they do not identify which of Becton's hundreds of contracts are allegedly "exclusionary," or which of Becton's customers are parties to these allegedly exclusionary contracts. In fact, other than alleging that Becton had "exclusive" contracts with "GPOs, individual hospitals, pharmacies, and other customers," plaintiffs allege no facts about which contracts are exclusive, which products they relate to, or who the parties are that are involved in those contracts. (Cplt. ¶ 81.) Plaintiffs should allege, at a minimum, which contracts they believe are suspect, with whom those agreements were made and which products the contracts cover. *See, e.g., JM Computer Servs., Inc.* v. *Schlumberger Techs., Inc.,* 1996 WL 241607, at *4 (N.D. Cal. May 3, 1996); *McPherson's, Ltd.* v. *Never Dull, Inc.,* 1990 WL 238812, at *3-4 (D.N.J. Dec. 26, 1990).

(3)    Regarding Anti-Competitive Effects. The Complaint contains no particularized allegations about competition in any specific market. Plaintiffs never once identify any specific product as the subject of an exclusive contract or a bundled discount. Nor do they ever allege that any specific contract or agreement impacted any specific product market or any specific competitor within that market. Instead, plaintiffs allege at a useless level of generality that Becton used "exclusionary bundling contracts" and offered "bundled" proposals to GPOs. But

15

plaintiffs never specify what specific products were supposedly bundled and to whom the proposals were made. (*See* Cplt. ¶¶ 64, 74.) The Complaint is silent about the competitive dynamics or prices in any specific product markets. Nor does it allege specifically how competition was hurt in any specific market. Nor does the Complaint allege what specific competitors (or would-be competitors) participated in, and were supposedly excluded from, which of the specific product markets.

(4)     Regarding Antitrust Injury. The Complaint may be at its most deficient when it comes to plaintiffs' alleged injury. Plaintiffs claim that they "incurred overcharges" for some unspecified products. (Cplt. ¶ 2.) What were those products? In what markets are plaintiffs consumers? The Complaint has no answer. Plaintiffs do not allege what products they buy from Becton. Plaintiffs certainly do not allege that they buy all of the alleged products and we do not believe plaintiffs could make that allegation and still comply with Rule 11. Since a plaintiff ordinarily must be a participant in the relevant market to suffer antitrust injury, *Schuylkill*, 113 F.3d at 415, plaintiffs cannot state a claim without alleging the specific market in which they buy or sell products. *See, e.g., id.*

(5)     Regarding Plaintiffs' Standing. Given their failure to allege the required factual particularity about the products and the markets, plaintiffs have not established their own standing to sue. To bring a private antitrust action, the

16

would-be plaintiff must allege "a causal connection between the [antitrust] violation alleged and the injury." *City of Pittsburgh* v. *West Penn Power Co.*, 147 F.3d 256, 265 (3d Cir. 1998). An injury that is not connected to the anticompetitive conduct, or is "too remotely connected in the causal chain from any wrongdoing," will not convey standing. *Steamfitters Local Union No. 420 Welfare Fund* v. *Philip Morris, Inc.*, 171 F.3d 912, 928 (3d Cir. 1991). As the Supreme Court has held, the question of standing "requires us to evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *Associated Gen. Contractors of Cal., Inc.* v. *Cal. State Council of Carpenters*, 459 U.S. 519, 535 (1983).

Here, the Complaint does not contain the specific factual allegations that the Court needs to assess plaintiffs' standing. Assuming, for example, that the Complaint had specifically alleged that Becton violated the antitrust laws in the conventional IV catheter market, plaintiffs have not alleged the facts that would give *them* standing to complain -- *e.g.*, that they actually buy conventional IV catheters, that the conduct alleged actually affected the price of conventional IV catheters, or that plaintiffs actually were injured by that conduct. Furthermore, if plaintiffs contend that Becton's conduct in one product market (*e.g.*, conventional IV catheters) gives plaintiffs standing to complain that they were harmed in an

entirely different market (*e.g.*, insulin needles), that kind of disconnected and attenuated claim is far too speculative to establish standing. *See id.* at 534-35.

The Complaint fails to state a claim because it fails to identify which actions and which contracts, with which GPOs, had which anti-competitive effect, in which product markets. *See, e.g., Garshman* v. *Universal Res. Holding, Inc.*, 824 F.2d 223, 230 (3d Cir. 1987). Whether by plaintiffs' design or default, the Complaint does not meet the most basic requirement of a pleading: to put the defendant on adequate notice of the facts alleged against it, such that it may defend itself. *See Lombard's, Inc.* v. *Prince Mfg., Inc.,* 753 F.2d 974, 975 (11th Cir. 1985). This is of even greater importance here where the named plaintiffs purport to represent every purchaser -- whether direct or indirect -- of Becton products in many multiple different product markets. Since the Complaint does not satisfy those threshold pleading standards, it should be dismissed.

## II.
## THE CLAYTON ACT CLAIM SHOULD BE DISMISSED BECAUSE THE PLAINTIFFS LACK STANDING TO ASSERT THIS CLAIM

Plaintiffs allege that, in violation of Section 3 of the Clayton Act, Becton entered into "agreements" with GPOs, individual hospitals, pharmacies and other customers where such contracts include terms providing for "exclusive dealing commitments" that constitute a restraint of trade. (Count I; Cplt. ¶¶ 79-84.) Only competitors and "restricted purchasers" -- purchasers who are parties to the

allegedly restrictive contract -- can sue for damages under Section 3 of the Clayton Act. *In re Iams Co. Litig.*, 1992 WL 1258515, at *5 (S.D. Ohio July 23, 1992); *see also S. Concrete Co.* v. *U. S. Steel Corp.*, 535 F.2d 313, 318 (5th Cir. 1976); *Thomas* v. *Amerada Hess Corp.*, 393 F. Supp. 58, 76 (M.D. Pa. 1975). Furthermore, a plaintiff purchaser must plead and prove, *inter alia*, that as a condition of sale under that contract, it is precluded from dealing with the sellers' competitors. *See Tampa Elec. Co.* v. *Nashville Coal Co.*, 365 U.S. 320, 327-28 (1961); *In re Iams*, 1992 WL 1258515, at *5.

Here, neither Drug Mart nor Jabo has alleged that they are parties to any contract with Becton, exclusionary or otherwise, prohibiting them from buying products from Becton's competitors. They therefore lack standing to assert a claim under Section 3. And if Drug Mart and Jabo do not have standing to assert claims on their own behalf, they cannot assert them on behalf of others. *See, e.g., Lewis* v. *Casey*, 518 U.S. 343, 357 (1996); *Warth* v. *Seldin*, 422 U.S. 490, 499 (1975); *Kauffman* v. *Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970). Consequently, the Complaint fails to state a claim under the Clayton Act and Count I should be dismissed.

**III.**
## PLAINTIFFS' "DIRECT" PURCHASER CLAIMS UNDER
## THE FEDERAL ANTITRUST LAWS SHOULD BE DISMISSED

Generally, "indirect" purchasers do not have standing to sue under the federal antitrust laws. *Illinois Brick* v. *Illinois*, 431 U.S. 720 (1977). Though plaintiffs acknowledge that they buy Becton products through distributors, they contend that they -- rather than the distributors -- should be treated as "direct" purchasers with standing to sue under the federal antitrust laws. (Cplt. ¶¶ 50-51.)

The Court need not wrestle with this issue because these two plaintiffs do not allege the facts -- nor could they allege the facts -- to give them federal standing, even under their own theory. The Complaint does not allege that these plaintiffs actually buy Becton's products in the manner that they say would make them "direct" purchasers.

Plaintiffs' theory goes like this. There are certain "healthcare providers" (which plaintiffs are not) who buy Becton products from "authorized distributors" under contracts negotiated directly between those healthcare providers (or their GPO agents) and Becton. (Cplt. ¶¶ 50-51.) The key fact is that the price paid by such healthcare providers is determined by their direct contracts with Becton, even though the products are purchased from an authorized distributor. Thus, plaintiffs allege, the "authorized distributors" "have no independent control over pricing for Becton's products" since the healthcare providers "negotiate[] a price for

20

Disposable Hypodermic Products with Becton, either directly or through a GPO."

(Cplt. ¶ 50.)  Instead, the "authorized distributors" act merely as a "distribution

agent, temporarily holding inventory and then delivering the product purchased."

(Cplt. ¶ 51.)  Accordingly, plaintiffs claim that they, not the authorized distributors,

are the true "direct" purchasers under federal law.

Becton agrees that such a pricing and distribution regime exists -- but Drug

Mart and Jabo are not in it.  Nor do they claim to be.  Nowhere do plaintiffs

actually allege that they purchase Becton products this way.  They do not allege to

be among the "healthcare providers" who contract directly with Becton.  Because

they don't.  They do not allege that they purchase from GPO "authorized

distributors."  Because they don't.  They do not allege that they belong to GPOs.

Because they don't.

While there may be some "healthcare provider" who can persuade this Court

that they function as "direct" purchasers, Drug Mart and Jabo have not alleged any

facts -- and cannot allege any facts -- that would give them federal standing.

Because plaintiffs have no standing to assert claims under the federal antitrust

laws, those claims should be dismissed with prejudice.  And again, as with their

Clayton Act claims, if Drug Mart and Jabo lack standing to assert claims on their

own behalf, they cannot assert them on behalf of others.  *See, e.g., Lewis* v. *Casey,*

518 U.S. 343, 357 (1996); *Warth* v. *Seldin*, 422 U.S. 490, 499 (1975); *Kauffman* v.

*Dreyfus Funds, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970).

## IV.
### PLAINTIFFS' "INDIRECT" PURCHASER CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT ALLEGED THE ESSENTIAL ELEMENTS OF AN ANTITRUST CLAIM UNDER ANY STATE LAW

Drug Mart and Jabo alternatively, or additionally, allege that they are

"indirect" purchasers of Becton products and thus assert claims under the laws of

each of their respective states, as well as on behalf of "indirect" purchasers in

twenty-four other jurisdictions.  (Cplt. ¶¶ 17, 99-105.)  Plaintiffs' state law claims

are based on the same factual assertions that underlie their federal claims.  As these

claims are insufficient under the Sherman Act, they must also be dismissed under

the varying states' equivalents of that Act.[5]

There is an additional, and independent, reason for dismissing plaintiffs'

"indirect" purchaser claims under state law: the Complaint fails to allege what

---

[5]    State antitrust laws generally follow federal law with respect to the critical elements necessary to assert an antitrust violation.  *See, e.g., Romero* v. *Philip Morris Inc.*, 109 P.2d 768, 771 (N.M. Ct. App. 2005) (finding the same elements must be found under the New Mexico Antitrust Act as under federal law); *Brixen & Christopher Architects, P.C.* v. *State*, 29 P.3d 650, 661 (Utah Ct. App. 2001) (same under Utah law); *Southard* v. *Visa U.S.A. Inc.*, 2004 WL 3030028, at *2-4 (Iowa D.C. Nov. 17, 2004) (noting the applicability of the federal antitrust standing factors test to claims brought under state antitrust law); *see also* Iowa Code § 553.2 (2006); Mich. Comp. Laws Ann. § 445.784(2) (2006); Nev. Rev. Stat. § 598A.050 (2005); N.M. Stat. § 57-1-15 (2006); Utah Code Ann. § 76-10-926 (West 2005); W. Va. Code § 47-18-16 (2006).

portion, if any, of Becton's alleged "overcharge" was passed on to them.  An indirect purchaser plaintiff must prove that Becton charged monopoly prices and that all or some of Becton's "overcharge" was passed through the distribution chain from the first purchaser to the indirect purchaser plaintiff.  *Illinois Brick Co.* v. *Illinois*, 431 U.S. 720, 732-33 (1977).  Thus, an indirect purchaser must allege and prove: (1) that a "direct" purchaser (*e.g.*, a wholesaler) was overcharged by Becton, (2) that the direct purchaser then passed on the overcharge, or some portion of it, to the "indirect" purchaser, and (3) that the indirect purchaser did not turn around and pass on all of the overcharge to its customers.  *See, e.g., In re Methionine Antitrust Litig.*, 204 F.R.D. 161, 164 (N.D. Cal. 2001) (plaintiff must prove that the "overcharge" was passed on to each class member and that the member absorbed the overcharge or was otherwise harmed); *A & M Supply Co.* v. *Microsoft Corp.*, 654 N.W.2d 572, 575 (Mich. Ct. App. 2002) ("proving overcharge and pass-on are essential to succeeding in an indirect purchaser suit under [Michigan law]"); *Melnick* v. *Microsoft Corp.*, 2001 WL 1012261, at *6 (Me. Super. Aug. 24, 2001).

Plaintiffs do not allege any of these essential facts: they do not allege that the distributor or wholesaler was overcharged, or that those distributors passed through an overcharge to them, or that they themselves retained that overcharge rather than passing it through to their customers.

23

# V.
## PLAINTIFFS' OTHER STATE LAW CLAIMS SHOULD BE DISMISSED AS THEY LACK STANDING TO BRING THOSE CLAIMS

Even if Drug Mart or Jabo could establish a claim under the state laws of New York or Tennessee, they do not have standing to pursue claims under any of the other twenty-four jurisdictions listed in the Complaint.[6]  Plaintiffs have made no allegation that they do business in any states other than New York and Tennessee, that they bought any Becton product in any state other than New York and Tennessee or that they suffered any injury in any state other than New York and Tennessee.  Yet plaintiffs purport to assert antitrust, consumer protection and quasi-contract claims under the laws of twenty-four other jurisdictions on behalf of themselves and consumers in each jurisdiction.  (Cplt. ¶¶ 99-113.)

Under Article III of the Constitution, federal courts have jurisdiction only to adjudicate actual "cases" or "controversies."  U.S. Const., art III, § 2.  In order to have standing to assert a claim, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct."  *Allen* v. *Wright*, 468 U.S. 737, 751 (1984); *see also Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Plaintiffs do not have standing to bring claims under the laws of states where they do not reside and in which they did not purchase any of the

---

[6]   Alabama, Arizona, California, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, Utah, Vermont, West Virginia, Wisconsin and the District of Columbia.

24

relevant products. *See, e.g., In re Starlink Corn Prods. Liab. Litig.*, 212 F. Supp.

2d 828, 851 (N.D. Ill. 2002); *In re Terazosin Hydrochloride Antitrust Litig.*,

160 F. Supp. 2d 1365, 1371-72 (S.D. Fla. 2001); s*ee also Warth* v. *Seldin*, 422 U.S.

490, 500 (1975) ("Essentially, the standing question . . . is whether the

constitutional or statutory provision on which the claim rests properly can be

understood as granting persons in the plaintiff's position a right to judicial relief").

Drug Mart and Jabo cannot acquire standing by asserting claims on behalf of

un-named, un-identified absent class members. "Inclusion of class action

allegations in a complaint does not relieve a plaintiff of himself meeting the

requirements for constitutional standing, even if the persons described in the class

definition would have standing themselves to sue." *Brown* v. *Sibley*, 650 F.2d 760,

771 (5th Cir. 1981). The "individual injury requirement is not met by alleging that

injury has been suffered by other, unidentified members of the class . . . ."

*Griffin* v. *Dugger*, 823 F.2d 1476, 1482-83 (11th Cir. 1987). As the Supreme

Court explained in *Lewis* v. *Casey*, 518 U.S. 343, 358 (1996), the named plaintiffs

"must allege and show that they personally have been injured, not that injury has

been suffered by other, unidentified members of the class." *Id.*; *see also*

*Kauffman* v. *Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970). That is because

a plaintiff must assert his own legal interests, not those of others. *Gladstone*

*Realtors* v. *Vill. of Bellwood*, 441 U.S. 91, 100 (1979); *Warth*, 422 U.S. at 499.

*In re Terazosin Hydrochloride Antitrust Litigation* illustrates this principle. There, plaintiffs asserted, among other things, antitrust claims under the statutes of eighteen jurisdictions. 160 F. Supp. 2d at 1370 n.2. However, the named plaintiffs neither resided in nor purchased the relevant products in several of those jurisdictions. *Id*. at 1370. The court therefore dismissed plaintiffs' claims under the laws of those jurisdictions for lack of standing, explaining that "named plaintiffs cannot rely on unidentified persons within those states to state a claim for relief." *Id.* at 1371; *but see In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 268 (D. Mass. 2004); *In re Buspirone Antitrust Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002).

There may well be absent claimants who reside in or have made purchases in one or more of the designated states so as to have standing to sue. But asserting claims on behalf of others cannot imbue Drug Mart or Jabo with standing. *See In re Terazosin*, 160 F. Supp. 2d at 1370-71; *Sherwood* v. *Microsoft Corp.*, 2003 WL 21780975, at *4 (Tenn. Ct. App. Aug. 2, 2004) ("[e]ach claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim") (citing *Griffin*, 823 F.2d at 1483). As the court explained in *In re Terazosin*, "[c]lass allegations that others suffered injuries giving rise to claims 'add . . . nothing to the question of standing.'" 160 F. Supp. at 1371 (quoting *Lewis*, 518 U.S. at 357). Therefore,

26

Count IV should be dismissed to the extent it purports to assert claims under the laws of any states other than New York and Tennessee.

## VI.
## CERTAIN STATE CLAIMS SHOULD BE
## DISMISSED AS THEY FAIL AS A MATTER OF LAW

Even if the Court were inclined to permit the other state law claims to go forward, a number of those claims are legally infirm and should now be dismissed.

### A.   The New York Antitrust and Consumer Protection Claims Must Be Dismissed As Plaintiffs Fail To State a Cause of Action

Drug Mart's claims for unreasonable restraint of trade, unlawful monopolization and attempted monopolization fail under New York's antitrust statute, the Donnelly Act, and New York's consumer protection statute.

New York and federal courts have consistently held that antitrust class actions seeking treble damages under the Donnelly Act are prohibited. *Leider* v. *Ralfe*, 387 F. Supp. 2d 283, 287-90 (S.D.N.Y. 2005); *see also Cox* v. *Microsoft Corp.*, 737 N.Y.S.2d 1, 2 (1st Dep't 2002); *Paltre* v. *Gen. Motors Corp.*, 810 N.Y.S.2d 496, 497-98 (2d Dep't 2006); *Asher* v. *Abbott Labs.*, 737 N.Y.S.2d 4, 4 (1st Dep't 2002).

That is because an action to recover a penalty can be maintained under New York law only if the statute "specifically authorizes the recovery thereof in a class action." New York's Civil Practice Law and Rules ("N.Y. C.P.L.R.") § 901(b) (McKinney 2005). The Donnelly Act's treble damages remedy "constitutes a

27

'penalty' within the meaning of CPLR 901(b)." *Cox*, 737 N.Y.S.2d at 2; *see also*

*Paltre*, 810 N.Y.S.2d at 497-98; *Asher,* 737 N.Y.S.2d at 4.  However, as the

Donnelly Act does not authorize the recovery of treble damages in a class action,

such actions are prohibited.  *Paltre*, 810 N.Y.S.2d at 498; *Cox*, 737 N.Y.S.2d at 2;

*Asher*, 737 N.Y.S.2d at 4; *Leider*, 387 F. Supp. 2d at 287-90.  Therefore, Drug

Mart's claims under the Donnelly Act must be dismissed.

New York's Consumer Protection Statute, N.Y. General Business Law

§ 349(a) (McKinney 2006), prohibits only "[d]eceptive acts or practices in the

conduct of any business, trade or commerce or in the furnishing of any service in

this state." *Id*.  To allege a cause of action under § 349, the complaint must plead

facts to indicate (1) that the defendant engaged in an act or practice that is

deceptive or misleading in a material way, and (2) that the plaintiff was injured as

a result.  *Goshen* v. *Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002).

Additionally, the alleged deception must have occurred in New York.  *Id.* at 1195-

96.

The Complaint does not contain a single allegation of deception, much less

any allegation that Drug Mart, a New York pharmacy, was misled by such

deception and suffered injury as a result.  Without allegations of deception,

plaintiffs' claims under § 349 fail.  As the Southern District of New York

explained, "any claim asserted [under § 349] must necessarily incorporate an

28

element of mendacity." *Leider*, 387 F. Supp. 2d at 295.  Plaintiffs allege no

deception, no subterfuge or no mendacity on the part of Becton.  *See id.*  Nor does

the Complaint allege that Becton deceived any consumer in New York.  Therefore,

plaintiffs' § 349 claims must be dismissed.  *See id.*; *Stutman* v. *Chem. Bank,* 731

N.E.2d 608, 613 (N.Y. 2000) (affirming dismissal of § 349 claim because plaintiffs

failed to allege that defendant committed a deceptive act); *In re Ford Motor Co.*

*Ignition Switch Prods. Liab. Litig.*, 2001 WL 1266317, at *10 (D.N.J. Sept. 30,

1997) (dismissing § 349 claim for failure to allege what "deceptive acts" plaintiffs

relied upon that would be actionable under this statute).

### B.   Plaintiffs' Massachusetts Claims Fail Because Massachusetts Does Not Recognize Indirect Purchaser Actions Under 93A § 11

The Massachusetts Antitrust Act ("the Antitrust Act") does not permit

indirect purchaser actions.  *Boos* v. *Abbott Labs.*, 925 F. Supp. 49, 51 (D. Mass.

1996).  Attempting to circumvent the Antitrust Act's ban on indirect purchaser

actions, plaintiffs assert claims under Section 11 of the Massachusetts Consumer

Protection Act.  Mass. Gen. Laws. Ann. ch. 93A § 11 (West 2006).  But that

provision does them no good as it states that in any unfair competition claims

brought under the section the court shall be guided in its interpretation by the

Antitrust Act. *Id.* Section 11 therefore also bans indirect purchaser actions, and

plaintiffs' claims under Massachusetts law should be dismissed.[7]

### C.   Plaintiffs' Montana Claims Must Be Dismissed as There Is No Cause of Action for Indirect Purchasers

The Montana Unfair Trade Practices Act ("MUPTA") does not create a right

of action for indirect purchasers. *See* Mont. Code Ann. § 30-14-222 (2005).

Moreover, the Montana courts follow federal antitrust law when interpreting

parallel antitrust provisions of MUPTA. *See Smith* v. *Video Lottery Consultants*,

858 P.2d 11, 13 (Mont. 1993); *Sadler* v. *Rexair, Inc.*, 612 F. Supp. 491, 495 (D.

Mont. 1985). Federal antitrust law bars indirect purchaser actions. *Illinois Brick* v.

*Illinois*, 431 U.S. 720 (1977). When Montana intends to deviate from federal

antitrust law, the statute does so expressly. *See, e.g., Smith*, 858 P.2d at 13. As

Montana has not adopted a cause of action for indirect purchasers, the Montana

law claims must be dismissed.

---

[7] Moreover, even if plaintiffs could assert a claim under § 11, it would have to be dismissed as plaintiffs have failed to show that the alleged conduct took place "primarily and substantially within the commonwealth." Mass. Gen. Laws Ann. ch. 93A, § 11. *See, e.g., Kuwaiti Danish Computer Co.* v. *Digital Equip. Corp.*, 781 N.E.2d 787, 799 (Mass. 2003) (courts should consider "whether the center of gravity of the circumstances that gave rise to the claim is primarily and substantially within the Commonwealth").

**D.    Plaintiffs' Alabama, District of Columbia, Mississippi, Nevada, South Dakota and West Virginia Claims Must Be Dismissed as These Statutes Regulate Intrastate Commerce**

The antitrust statutes of Alabama, the District of Columbia, Mississippi, Nevada, South Dakota and West Virginia regulate conduct within those states, not conduct that is interstate in nature. *See* Ala. Code § 6-5-60 (2005); D.C. Code § 28-4501 (2006); Miss. Code Ann. § 75-21-9 (West 2006); Nev. Rev. Stat. § 598A.060 (2005)[8]; S. D. Codified Laws § 37-1-3.1 (2006); W. Va. Code § 47-18-3 (2006).  As the Alabama courts have explained, its antitrust laws regulate only "monopolistic activities that occur within this state -- within the geographic boundaries of this state," *Archer Daniels Midland Co.* v. *Seven Up Bottling Co. of Jasper*, 746 So. 2d 966, 989-90 (Ala. 1999), and not "goods that were manufactured in another state and traveled in interstate commerce before arriving in Alabama." *Griffiths* v. *Blue Cross & Blue Shield of Ala.*, 147 F. Supp. 2d 1203, 1220 (N.D. Ala. 2001) (summarizing the Alabama Supreme Court holdings in *Archer Daniels* and *Abbott Labs.* v. *Durrett*, 746 So. 2d 316 (Ala. 1999).  *See also Sun Dun, Inc. of Wash.* v. *Coca-Cola Co.*, 740 F. Supp. 381, 396-97 (D. Md. 1990) (applying District of Columbia law); *In re Microsoft Corp. Antitrust Litig.*, 2003

---

[8]    Even if plaintiffs could proceed on their Nevada claims, the antitrust claims are cognizable under the laws of Nevada only as of July 1, 2001.  In 2001, the Nevada legislature amended Nevada Revised Statutes § 598A.060 to add for the first time a prohibition of "monopolization of trade or commerce" within the state.  Nev. Rev. Stat. § 598A.060.1(e); 2001 Nev. Stat. ch. 63, § 2.

WL 22070561, at *1 (D. Md. Aug. 22, 2003) (applying Mississippi law, under which plaintiffs must allege some conduct that was performed wholly intrastate).[9]

Those states have made it clear that their antitrust laws do not regulate interstate conduct because interstate commerce is regulated by federal, not state, antitrust laws. *See Archer Daniels*, 746 So. 2d at 988-89; *Sun Dun,* 740 F. Supp. at 396; *Standard Oil Co. of Ky.* v. *State ex rel. Attorney Gen.*, 65 So. 468, 470-71 (Miss. 1914); *In re Microsoft Corp. Antitrust Litig.*, 2003 WL 22070561, at *1.

Plaintiffs make no attempt to allege that any activity occurred primarily within any of these states.  To the contrary, plaintiffs allege that the products Becton manufactures are bought and shipped through *interstate* commerce to purchasers located throughout the United States.  As plaintiffs explain for each of the alleged product markets: Becton sells the products "in *interstate commerce* to the healthcare industry *throughout the United States*." (Cplt. ¶¶ 27, 31, 42.)  In fact, the only individual state in which conduct is alleged to have occurred is

---

[9]   Plaintiffs' claims under the Mississippi Consumer Protection Act also fail as a matter of law because this Act does not permit class actions. *See In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 2001 WL 1266317, at *9 (D.N.J. Sept. 30, 1997) (dismissing Mississippi statutory fraud claim because class actions may not be brought under this statute); Miss. Code Ann. § 75-24-15(4) (West 2006).  In general, Mississippi does not allow class action lawsuits. *USF & G Ins. Co. of Miss.* v. *Walls*, 911 So. 2d 463, 467 (Miss. 2005) ("This Court has the exclusive power to make rules of practice, procedure, and evidence. Accordingly, as we have not made a rule which provides for class actions, they are not a part of Mississippi practice--chancery, circuit, or otherwise").  Furthermore, even if this is brought as an individual claim, plaintiffs cannot meet the statute's requirement that they purchase those goods "primarily for personal, family or household purposes." Miss. Code Ann. § 75-24-15(1).

New Jersey, for which plaintiffs allege, in support of their venue claims, that a "substantial portion of the affected *interstate* trade and commerce described below has been carried out, in this district."[10]  (Cplt. ¶ 11.)

As the alleged conduct and distribution system is interstate in nature, the claims under these six states should be dismissed.

## E.   Plaintiffs' Hawaii Claims Must be Dismissed as Plaintiffs Failed to Follow Mandated Procedures for Filing Such a Claim

Plaintiffs have failed to satisfy the mandated procedural requirements necessary to bring this class action under Hawaii state law.  Hawaii Revised Statutes § 480-13.3(a)(1) (2005) requires that indirect purchaser plaintiffs file a copy of their complaint and supporting materials with the attorney general in camera no later than seven days after the initial filing of the action.  *Id*.  The attorney general maintains "sole discretion to determine whether the State will proceed with the action" in place of the private plaintiff.  Haw. Rev. Stat. §§ 480-13.3(a)(1), 480-13.3(a)(4).  The complaint must not be served on the defendant until the court so orders.  Haw. Rev. Stat. § 480-13.3(a)(1).  Plaintiffs fail to allege that they followed these required actions.  As such, the claims must be dismissed.

---

[10]  New Jersey is not one of the twenty-six states under whose laws plaintiffs allege a claim because New Jersey does not allow indirect purchaser claims. *Wilson* v. *Gen. Motors Corp.*, 2006 WL 1767754, at *6 (N.J. Super. Ct. App. Div. June 29, 2006); *see also* N.J. Stat. Ann. § 56:9-18 (West 2006) (requiring the New Jersey Antitrust Act to be interpreted "in harmony" with federal law).

**F.     Plaintiffs' Utah, Nebraska and Hawaii Claims Fail for the Time Before Those States Recognized Indirect Purchaser Actions**

Absent a recognized right of action under state law, indirect purchasers lack standing to sue. *Fed. Trade Comm'n v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 43 (D.D.C. 1999).

Before May 1, 2006, Utah did not recognize a right of action for indirect purchasers. *Id.* at 52; *see also Bunker's Glass Co. v. Pilkington, PLC*, 75 P.3d 99, 104, n.2 (Ariz. 2003) (noting that Utah is among "[t]welve states [that] have no rule regarding indirect purchasers"). As of May 1, 2006, the Utah legislature expressly provided a right of action for indirect purchasers under Utah Code Annotated § 76-10-919. *See* 2006 Utah Laws Ch. 19 (S.B. 16). Plaintiffs therefore have no indirect purchaser cause of action under Utah law before the statute's effective date of May 1, 2006. *See, e.g., Goebel v. Salt Lake City S. R.R. Co.*, 104 P.3d 1185, 1197-98 (Utah 2004) (a statutory provision is not retroactive unless it "expressly declares that it operates retroactively").

Plaintiffs' claims are likewise not cognizable under the laws of Nebraska before July 19, 2002. At that time, the Nebraska legislature amended the Junkin Act to eliminate the *Illinois Brick* bar on indirect purchaser antitrust suits. *Tackitt v. Visa U.S.A., Inc.*, 2004 WL 2475281, at *3 (Neb. Dist. Ct. Oct. 14, 2004); *see* Lexis notes for Neb. Rev. Stat. Ann. § 59-821 (LexisNexis 2005).

Accordingly, any Nebraska claims for alleged violations prior to July 19, 2002 must be dismissed.

Similarly, plaintiffs' claims are cognizable under the laws of Hawaii only as of June 28, 2002, at which time the state legislature amended Hawaii Revised Statutes Chapter 480 to permit private indirect purchaser antitrust class actions. *Hindman* v. *Microsoft Corp.*, 88 P.3d 1209, 2004 WL 928283, at *1, *2 n.2 (Haw. Apr. 30, 2004); *see also* Lexis notes for Haw. Rev. Stat. Ann. §§ 480-2, 480-13, and 480-13.3 (LexisNexis 2004).  Prior to June 28, 2002, the Hawaii attorney general was the only party with a right to bring indirect purchaser antitrust class action suits under state law.  *Hindman*, 88 P.3d at *1.

### G.    Plaintiffs' Alabama, Kansas and Tennessee Claims Fail As Those States Do Not Provide A Cause of Action For Attempted Monopolization

The antitrust statutes of Alabama, Kansas and Tennessee do not recognize a cause of action for attempted monopolization.  *See* Ala. Code § 6-5-60(a); Kan. Stat. Ann. § 50-101 *et seq.* (2005); Tenn. Code Ann. § 47-25-101 *et seq.* (2006); *Bergstrom* v. *Noah*, 974 P.2d 520, 525 (Kan. 1999) (noting district court's conclusion that there was no cause of action under Kansas statutes for attempted

monopolization).[11]  Therefore, plaintiffs' attempted monopolization claims under these state laws should be dismissed.

**VII.**
**PLAINTIFFS' CLAIMS FOR UNJUST**
**<u>ENRICHMENT MUST BE DISMISSED</u>**

Plaintiffs attempt to circumvent the shortcomings of their antitrust claims by bringing two counts of unjust enrichment under the laws of twenty-five jurisdictions.[12]  (Counts V and VI; Cplt. ¶¶ 106-113.)  Unjust enrichment is an equitable remedy available in situations where an injured party has conferred some benefit on another party and has no contractual or other basis on which to recover. *See, e.g., Ritter, Laber and Assocs., Inc.* v. *Koch Oil, Inc.*, 680 N.W.2d 634, 642-43 (N.D. 2004).

The elements of a cause of action based upon unjust enrichment are: "(1) the plaintiff conferred a benefit upon the defendant; (2) the defendant accepted and retained the benefit; and (3) it would be unjust for the defendant not to pay the

---

[11]   While plaintiffs list Kansas in the "Class" (Cplt. ¶¶ 17, 100), the Complaint fails to cite any Kansas law to support Count IV.  (*See* Cplt. ¶ 101.)  Becton can only presume that plaintiffs intend to bring their claims under Kansas Statutes Annotated § 50-101 *et seq.*

[12]   Becton presumes plaintiffs are asserting unjust enrichment claims as indirect purchasers under the laws of the states identified in Counts V and VI.  As indirect purchasers, it is clear that plaintiffs cannot use these claims to recover money for violations of the federal antitrust laws.  *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 211 (D. Me. 2004).  *See also Fed. Trade Comm'n* v. *Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 41-42 (D.D.C. 1999).

36

plaintiff the value of the benefit." *See*, *e.g.*, *Rapaport* v. *U.S. Dept. of Treasury, Office of Thrift Supervision*, 59 F.3d 212, 217 (D.C. Cir. 1995). "The granting of equitable relief on a theory of unjust enrichment requires the 'indispensable ingredient' of an injustice as between the two parties involved." *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 330 (E.D.N.Y. 2005) (quoting *Banco Espirito Santo de Investimento, S.A.* v. *Citibank, N.A.*, 2003 WL 23018888, at *18 (S.D.N.Y. Dec. 22, 2003)). That is not the case here. Plaintiffs' unjust enrichment claims are based on the same alleged facts and same alleged damages as their antitrust claims: that they "paid too much" for Becton products and that the "overcharge" was an "unjust benefit" plaintiffs conferred on Becton. (Cplt. ¶¶ 108, 112.)

Drug Mart's and Jabo's claims fail under the laws of New York and Tennessee. Under New York law, in order to recover damages for unjust enrichment, a plaintiff needs to be in privity with the defendant. *See*, *e.g.*, *Sperry* v. *Crompton Corp.*, 810 N.Y.S.2d 498, 499-500 (2d Dep't 2006). That means there must be some type of "direct dealing" or "actual, substantive relationship" between plaintiff and defendant. *Redtail Leasing, Inc.* v. *Bellezza*, 1997 WL 603496, at *8 (S.D.N.Y. Sept. 30, 1997); *In re Motel 6 Sec. Litig.*, 1997 WL 154011, at *7 (S.D.N.Y. Apr. 2, 1997); *but see Cox* v. *Microsoft Corp.*, 778 N.Y.S.2d 147, 149 (1st Dep't 2004). Here, Drug Mart alleges that it bought

Becton's products through a distributor or a wholesaler. (Cplt. ¶ 14.) Drug Mart alleges no direct dealings or a relationship of any kind with Becton. Therefore, its claim under New York law cannot be sustained.

Jabo's claim fares no better under Tennessee law. There, in order to recover under an unjust enrichment claim, a plaintiff must "demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract." *Freeman Indus., LLC* v. *Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). Here, Jabo must allege that it has exhausted its remedies against the distributors and wholesalers from which it purchased Becton products or show that the pursuit of such remedies would be futile. *Id.* at 526; (Cplt. ¶ 13.) As the Complaint fails to allege exhaustion of remedies, Jabo's unjust enrichment claim must be dismissed.

The claims in the other twenty-three states must be dismissed as well. As detailed above, Drug Mart and Jabo do not have standing to assert claims on behalf of unidentified persons in states in which they do not do business. *See* Section V.

## CONCLUSION

For the reasons set forth above, Becton respectfully submits that its motion to dismiss should be granted in all respects. Further, plaintiffs have now been given an opportunity to replead their claims in this consolidated complaint, and given their lack of standing to assert most of the claims, and their inability to allege

facts to support those claims in which they might have standing, further

amendment of the Complaint would be futile, and the Complaint should be

dismissed with prejudice.

Dated: July 14, 2006                    Respectfully submitted,


LOWENSTEIN SANDLER PC


By: _____
        Gregory B. Reilly
        Deborah A. Silodor
65 Livingston Avenue
Roseland, NJ 07068
Telephone: (973) 597-2500

                - and -

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
        Theodore V. Wells, Jr.
        Moses Silverman
        Robert A. Atkins
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone: (212) 373-3000


Attorneys for Defendant
Becton Dickinson & Company