LAW OFFICES OF JAMES V. BASHIAN, P.C.
James V. Bashian
70 Adams Street, Fourth Floor
Hoboken, New Jersey, 07030
Tel. (973) 227-6330
Fax (201) 488-3330

Attorneys for Plaintiff [Additional Counsel Listed at Signature Page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: HYPODERMIC PRODUCTS ANTITRUST LITIGATION | Case No. 05-CV-1602 (JLL)(CCC) MDL No. 1730 Judge Jose L. Linares Magistrate Judge Claire C. Cecchi |
| THIS DOCUMENT RELATES TO: JABO'S PHARMACY, INC., and DRUG MART TALLMAN, INC., Plaintiffs, v. BECTON DICKINSON & CO., Defendant. | Case No. 05-CV-5892 Case No. 06-CV-0174 |
| MEDSTAR HEALTH, INC., et al., Plaintiffs, v. BECTON DICKINSON & COMPANY, Defendant. | Case No. 06-CV-03258 Return Date: June 1, 2009 Electronically Filed |

**HEALTHCARE PLAINTIFFS' REPLY BRIEF
IN SUPPORT OF THEIR MOTION
TO ISSUE INJUNCTION UNDER ALL WRITS ACT**

# Table of Contents

Table of Authorities ....................................................................................................... ii

Introduction ................................................................................................................... 2

Argument ........................................................................................................................ 2

A.    The Settlement Agreement is a Blatant Attempt to Circumvent the Court's Jurisdiction as Provided for in CMO No. 10 ........................................ 2

B.    Preliminary Approval of this Settlement Is Not the Proper Context in which to Resolve the Direct Purchaser Issue ...................................................... 5

C.    The Settlement Agreement Improperly Seeks to Settle and Release the Healthcare Plaintiffs' Claims ...................................................................... 6

D.    Allowing Becton and the Distributor Plaintiffs to Move for Preliminary Certification and Settlement Approval Would Waste Judicial Resources ................................................................................... 8

E.    The Healthcare Plaintiffs Have Properly Availed Themselves Of The All Writs Act ......................................................................................... 9

F.    The Healthcare Plaintiffs Have A Reasonable Probability of Success on the Merits Because the Settlement Agreement Seeks to Circumvent this Court's Jurisdiction over the Direct Purchaser Dispute ......................... 12

    a.    The Healthcare Plaintiffs Have A Reasonable Probability of Success Because the Settling Parties Have Sought to Extinguish Their Claims ........................................................................... 13

    b.    Absent an Injunction, the Healthcare Plaintiffs Will be Irreparably Harmed ............................................................. 13

    c.    The Settling Parties Would Not Be Irreparably Harmed by the Entry of An Injunction ............................................................ 14

Conclusion .................................................................................................................... 15

# Table of Authorities

## FEDERAL CASES

*In re Comm. Bank of N. Va. & Guaranty Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277 (3d Cir. 2005)............................................................1

*Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322 (3d Cir. 2007) ........................11

*Maint. Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998) ....................................10

*In re Managed Care Litig.*, 236 F. Supp. 2d 1336 (S.D. Fla. 2002)..................................11

*In re Methyl Tertiary Butyl Ether Products Liab. Litig.*, 209 F.R.D. 323 (S.D.N.Y. 2002) ........................................................................................................9

*In Re: Orthopedic "Bone Screw" Products Liab. Litig.*, 132 F.3d 152 (3d Cir. 1997) ...............................................................................................................10

*In re Prudential Ins. Co.*, 148 F.3d 283 (3d Cir. 1998) ....................................................14

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ......................................1

*San Filippo v. Bongiovanni*, 30 F.3d 424 (3d Cir. 1994)..................................................15

*Simer v. Rios*, 661 F.2d 655 (7th Cir. 1981) .......................................................................9

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 23 ......................................................................................................... *passim*

## Introduction

The settlement agreement finally revealed by Becton and the Distributors is the product of a classic "reverse auction."[1]  As expected, Becton has zeroed in on the plaintiff group with the smallest and weakest direct purchaser claims and is attempting to use a cheap settlement with them to globally extinguish *all* direct purchaser claims in this case.  The Distributors, meanwhile, are content to trade off the claims of thousands of direct purchasers they do not, and cannot, represent, because they know the closer they get to the Court deciding the direct purchaser issue on the merits, the weaker their bargaining position with Becton becomes.  Hand in hand, the Distributors and Becton are now trying to circumvent CMO No. 10 and the summary judgment procedure the Court has established to litigate the direct purchaser issue.  They will try to bury their challenge to the MedStar and Hebrew Home plaintiffs' direct purchaser status in stipulated "findings" that they will ask the Court to make in the context of a motion for preliminary approval of

---

[1]    Judge Richard Posner described the paradigmatic reverse auction: "defendant, in a series of class actions, picks the most ineffectual class lawyers to negotiate a settlement with the hope that the district court will approve a weak settlement that will preclude other claims against the defendant.'" *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002); *see also In re Community Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 308 (3d Cir. 2005).  Both the *Manual for Complex Litigation* and the often-cited *Reynolds* decision look at reverse auctions as a corrupt bargain where (i) competition is leveraged by defendants to (ii) expose the most ineffectual plaintiffs group, (iii) resulting in a settlement that is objectively inadequate.

their settlement under Federal Rule of Civil Procedure 23. While the Healthcare Plaintiffs do not take issue with Becton settling the claims of Distributors on a nationwide basis, they vigorously object to any attempts by the Distributors or Becton to utilize a settlement to effectively back-door affirmative findings that the MedStar or Hebrew Home plaintiffs are *not* direct purchasers.

The Court should enjoin Becton and the Distributors from presenting for preliminary approval their current settlement agreement — which seeks affirmative "findings" that the MedStar and Hebrew Home plaintiffs are not direct purchasers because: (i) the settlement agreement improperly requires the Court, without a developed record, to make pre-ordained findings to extinguish the antitrust standing of the MedStar and Hebrew Home plaintiffs, as well as thousands of other entities with direct contracts with Becton, from whom the entire settlement process was kept secret; and (ii) it would be a waste of judicial resources to brief and argue any motion for preliminary approval of the current version of the settlement agreement because the class entitled to receive notice of that proposed settlement cannot properly be ascertained.

## Argument

### A. The Settlement Agreement is a Blatant Attempt to Circumvent the Court's Jurisdiction as Provided for in CMO No. 10

The Healthcare Plaintiffs maintained in their opening motion that the Settlement Agreement between Becton and the Distributors is an attempt to

circumvent CMO No. 10 and the Court's jurisdiction over the fundamental issue of antitrust standing. The filings of Becton and the Distributors in response to these charges, including the settlement agreement itself, prove that the Healthcare Plaintiffs are correct. The settling parties appear poised to leapfrog the direct purchaser summary judgment structure set out in CMO No. 10 by asking the Court to make adverse "findings" regarding the direct purchaser standing of the Healthcare Plaintiffs in connection with a motion for preliminary approval of their collusive settlement and preliminary certification of a settlement class. *See* Settlement Agreement § 2.

In other words, rather than litigate, through the pending summary judgment motions, the issue of whether there are sufficient undisputed material facts for the Court to determine that the MedStar and/or Distributor plaintiffs have direct purchaser standing, Becton and the Distributors have appropriated this decision-making authority for themselves, agreeing to the result as a critical part of their sweetheart settlement. [2]

---

[2] Notably, neither Becton nor the Distributor plaintiffs has moved for summary judgment that the MedStar plaintiffs are *not* direct purchasers, and the deadline for doing so has long passed. Even if the MedStar plaintiffs' pending summary judgment motion were denied, the result would be that the genuine issues of disputed material fact about the MedStar plaintiffs' direct purchaser standing would be presented to the finder of fact for final determination if they were not first resolved consensually by the parties.

Specifically, the settling parties have entered into an agreement which *presumes*, and thus presupposes that the Court will *find* that:

> (i) each of the Direct Purchaser Plaintiffs had Direct Purchaser standing to assert damage claims against BD under Section 4 of the Clayton Act for all BD Hypodermic Products it purchased from BD,

> (ii) MedStar Health, Inc., MedStar-Georgetown Medical Center, Inc., Washington Hospital Center Corporation, National Rehabilitation Hospital, Inc. and the Hebrew Home for the Aged at Riverdale do not have Direct Purchaser standing to assert damage claims against BD under Section 4 of the Clayton Act for any BD Hypodermic Products any of them purchased from or through a distributor or other intermediary, and

> (iii) only those purchasers of BD Hypodermic Products who purchased those products from BD and were invoiced by BD for those products have Direct Purchaser standing to assert damage claims against BD under Section 4 of the Clayton Act with respect to Class Purchases.

*See* Ex. A to Settlement Agreement ¶ 3.

Unlike the summary judgment procedure this Court ordered, the "findings" required as part of the settlement agreement do not provide for any analysis of facts or evidence. Instead, the Court is apparently supposed to make the ultimate "finding" of the MedStar and Hebrew Homes plaintiffs' direct purchaser standing in conjunction with the preliminary settlement approval process governed by Fed. R. Civ. P. 23, based primarily upon the fact that Becton and the Distributor plaintiffs have agreed to it.

## B. Preliminary Approval of this Settlement Is Not the Proper Context in which to Resolve the Direct Purchaser Issue

Even though their settlement has been final for a month, the Distributors and Becton now threaten that they will present their collusive settlement for preliminary approval "shortly" and argue that the Healthcare Plaintiffs should not worry because, under the terms of CMO No. 10, they will have the chance to object to the stipulated direct purchaser "findings" Becton and the Distributors will ask the Court to make.

The settling parties' claim that the settlement agreement "embraces" CMO No. 10 by providing for "the resolution of the still-outstanding issue of 'direct purchaser' standing" (Becton Opp. at 3), as well as "a proposed mechanism for the Court to resolve the standing dispute expeditiously in view of the Settlement . . . ." (Distributor Opp. at 2), are nonsense. The only "process" provided for in the Settlement Agreement is for the settling parties to "present" their agreed-upon findings to the Court for adoption as part of the preliminary approval process.

The settlement agreement's mere acknowledgement of the existence of CMO No. 10 does not change the settlement agreement's deliberate evasion of the content of the Order. Nor does the settlement agreement's recitation of the *existence* of pending motions for summary judgment mean that the settling parties will not make a farce of those motions and the related discovery.

## C. The Settlement Agreement Improperly Seeks to Settle and Release the Healthcare Plaintiffs' Claims

Despite the settling parties' feigned denials, the settlement agreement does, as the Healthcare Plaintiffs surmised, improperly seek to settle and release their claims. In the settlement agreement, "the Direct Purchaser Class" is defined as:

> All persons or entities (and assignees of claims from such persons and entities) who (1) purchased BD Hypodermic Products in the United States from BD at any time during the period of March 23, 2001 through the date of this Settlement Agreement (the "Class Period"), and (2) were invoiced by BD for said purchases.

*Id.* § 1.

The Persons or entities who purchased BD Hypodermic Products in the United States from BD during the Class Period and were invoiced by BD for said purchases are entities who appear in the 'bill to' or 'sold to' fields of BD's electronic sales data for those purchases." *Id.* The settlement agreement releases the claims of this Direct Purchaser Class exactly as it is defined. *See id.* § 13.

Under this language, a large percentage of the Healthcare Plaintiffs' claims, which counsel for the Distributors have no right to represent, would in fact be released. As the Healthcare Plaintiffs explained in their motion for partial summary judgment, under Becton's "Dealer Notification" contracts, Becton's distributors acted as "servicing agents" to hospitals and other entities with GPO contracts, which the Healthcare Plaintiffs contend are the actual direct purchasers of Becton's hypodermic products. Through their status as servicing agents for

Becton, it is the Distributors' names that appear in the "bill to" and "ship to" fields of Becton's sales data, even though the Distributors' are not direct purchasers for these sales by Becton. *See* Memorandum of Law in Support of MedStar's Motion for Partial Summary Judgment That It is a Direct Purchaser Under Section 4 of the Clayton Act (Apr. 25, 2007) at 8-10.

Despite this obvious truth, the Distributors assert that the Healthcare Plaintiffs have reached the "misguided conclusion"[3] that their claims would be released. According to the Distributors, "the proposed settlement would release, if approved, *only the claims of the Directs.*" Distributor Opp. at 10 (emphasis in original). That statement, of course, is meaninglessly circular, as what constitutes "the claims of the Directs" depends on the definition of "Directs." And, since the Healthcare Plaintiffs are direct purchasers, their claims are released by the current settlement agreement.[4] Certainly no appellate court will uphold a settlement

---

[3] The claims of the Distributors and Becton that any of Healthcare Plaintiffs' claims about the substance of the settlement are somehow misguided or without basis are rather ironic given that, though Becton disclosed the existence of the settlement to Healthcare Plaintiffs in January of this year, both parties refused to provide Healthcare Plaintiffs with any details about the settlement until they were forced to by the Healthcare Plaintiffs' filing of their Motion. Of course, regardless of the settling parties' claims of Healthcare Plaintiffs' "outrageous" speculation, neither of the settling parties has denied that the Settlement Agreement does exactly what the Healthcare Plaintiffs said it would do.

[4] In addition to buying from Becton through their GPO contract, the MedStar plaintiffs also satisfy the definition of "direct purchaser" in the proposed settlement agreement because, for a certain limited number of transactions, they do not receive their products through one of Becton's servicing agents and thus they

negotiated by a party at a time when that party did not know the total scope of the damages that could be asserted by other members of the class on whose behalf the settlement was negotiated.

### D. Allowing Becton and the Distributor Plaintiffs to Move for Preliminary Certification and Settlement Approval Would Waste Judicial Resources

Becton and the Distributor Plaintiffs should be enjoined from proceeding with their application for preliminary approval of their settlement and settlement class under Rule 23(e) because preliminary approval would be premature and a waste of judicial and party resources. By the terms of the Distributors and Becton's current settlement agreement, the Court will not be able to certify the proposed settlement class until the direct purchaser issue is fully litigated. Nor will the Court be able to give notice to the class members to be "bound by the proposal," as required by Rule 23(e)(2), until after it determines who is properly in the class. After all, Rule 23 requires that any order certifying a class "must define

---

themselves appear in the "bill to" and/or "sold to" columns of Becton's sales data. Under the proposed settlement agreement and its broadly-worded release, the MedStar plaintiffs —and potentially thousands of Healthcare Providers like them— would be releasing *all* of their claims against Becton, whether direct or indirect, if the proposed settlement were approved. *See, e.g.,* paragraph 12 of Proposed Order Approving Settlement). Even the settling parties must agree that preliminary approval of such a sweeping release would be completely inappropriate.

the class." Fed.R.Civ.P. 23(c).[5]  Thus, when analyzing whether a class should be certified, courts require the class to be "identifiable," meaning that "members can be ascertained by reference to objective criteria." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 209 F.R.D. 323, 336 (S.D.N.Y. 2002).  "[I]dentifying the class insures that those actually harmed by defendants' wrongful conduct will be the recipients of the relief eventually provided."  *Simer v. Rios*, 661 F.2d 655, 670 (7th Cir. 1981).  The Manual for Complex Litigation explains that:

> [a]lthough the identity of individual class members need not be ascertained before class certification, the membership of the class must be ascertainable .... An identifiable class exists if its members can be ascertained by reference to objective criteria. *The order defining the class should avoid ... terms that depend on resolution of the merits…*"[6]

The Court's ability to define a settlement class under the terms of the current settlement agreement between Becton and the Distributors depends upon the *prior* resolution of the substantive issue of who is the direct purchaser.   Therefore, the Court should enjoin Becton and the Distributors' proposed settlement until the parties have the opportunity to litigate the direct purchaser issue fully and  fairly.

### E. The Healthcare Plaintiffs Have Properly Availed Themselves Of The All Writs Act

---

[5] It is "settled that a class action must meet the requirements of Rule 23 whether certified for litigation or judgment."  *See* Conte & Newberg, Newberg On Class Actions (Fourth) (2002).

[6] Manual for Complex Litigation (Fourth), § 21.222 (2004) (emphasis added).

The All Writs Act permits a court to enter an injunction where necessary or appropriate in aid of its jurisdiction. Nowhere in the language of the Act itself does Congress delineate or limit the circumstances in which courts may or may not utilize the powers granted to them by the Act.[7]

Becton and the Distributors separately argue that, because the All Writs Act is traditionally used by one court to enjoin another, this Court is somehow precluded from enjoining the settlement because the competing claims have been asserted in one consolidated case. (See Becton Br. at 6-8; Distributor Br. at 12-15). Neither Becton nor the Distributors explain why each believes that because the statute may not previously have been used in the manner suggested, the Court is precluded from doing so here. Neither cites to any case holding that the Court is precluded from taking the steps requested by this motion. Rather, the unique facts presented here, where one group of litigants is attempting to interfere with

---

[7]  This Court also has the power to enjoin Becton and the Distributors from presenting their settlement for preliminary approval pursuant to its inherent authority to manage its own affairs. *See In Re: Orthopedic "Bone Screw" Products Liability Litigation*, 132 F.3d 152, 156 (3d Cir. 1997). "It has long been recognized that courts are vested with certain inherent powers that are not conferred either by Article III or by statute, but rather are necessary to all other functions of courts." *Id.* These inherent powers "include the authority to decide the order in which to decide and hear pending issues." *Maintenance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 218 (5th Cir. 1998) (affirming the district court's exercise of its discretionary authority to handle the case in the most efficient way by ruling upon the potentially dispositive issue first). Thus, this Court would have the power to enjoin the settlement agreement under its inherent authority, even if it did not have the authority to do so pursuant to the All Writs Act.

jurisdiction of, and to frustrate the proceedings in, this Court, are directly analogous to the cases where courts have previously issued injunctions under the All Writs Act. *See* Opening Brief at 7-9. Indeed, it would be an anomalous result were the Court empowered to enjoin the settlement had it been agreed to in some other court, but is precluded from doing so because the settlement has been proposed in this Court.

Both Becton and the Distributors rely heavily on *Grider v. Keystone Health Plan Central, Inc.*, 500 F.3d 322 (3d Cir. 2007) in support of their assertions that the Healthcare Plaintiffs cannot seek an injunction under the All Writs Act. However, while *Grider* does note that the All Writs Act is "typically" used by federal courts to enjoin actions by state courts that threaten a federal court's jurisdiction, nowhere does *Grider* say that the Act is exclusively used for that purpose and nowhere does *Grider* say that the Healthcare Plaintiffs here are precluded from looking to the All Writs Act to seek to enjoin the proposed settlement under the very unusual circumstances presented. To the contrary, the court in *Grider* specifically noted that, while most injunctions are issued to protect a settlement, an injunction can also issue to prevent a settlement that was achieved through "underhanded maneuvers" and in an "obvious attempt to avoid" the Court's jurisdiction. *Grider*, 500 F.3d at 331 (citing *In re Managed Care Litig.*, 236 F. Supp. 2d 1336 (S.D. Fla. 2002)).

Here, the Distributors' and Becton's secretive settlement agreement and attempt to bargain away the direct purchaser claims of parties they purposely excluded from that agreement certainly smack of underhanded maneuvers and obvious attempts to circumvent CMO No. 10.

## F. The Healthcare Plaintiffs Have A Reasonable Probability of Success on the Merits Because the Settlement Agreement Seeks to Circumvent this Court's Jurisdiction over the Direct Purchaser Dispute

Becton claims that the Healthcare Plaintiffs have no likelihood of success and face no irreparable harm because the Settlement Agreement does not seek to circumvent this Court's authority. Becton's claim is wrong. The Settlement Agreement unabashedly circumvents this Court's authority by replacing a fulsome adversary discovery process with a paid-for agreement by Becton to support the position of one set of plaintiffs at the expense of another, the results of which are to be entered by the Court as "findings" in connection with preliminary approval of the parties' settlement. Thus, if the Settlement Agreement is approved in its current form, the Healthcare Plaintiffs will be deprived of the discovery which this Court has ordered numerous times and will have no choice other than to object to the preordained "findings" enumerated in the settlement agreement.[8]

---

[8] Since the Healthcare Plaintiffs filed this motion under the All Writs Act, both Becton and the Distributor Plaintiffs have emerged from their months-long cones of silence concerning 56(f) discovery, and 56(f) depositions in particular. Rather than belabor the Court with contesting the falsehoods in the Distributors' and Becton's recitations of how cooperative and forthcoming they have been about

### a. The Healthcare Plaintiffs Have A Reasonable Probability of Success Because the Settling Parties Have Sought to Extinguish Their Claims

As set forth more fully above in Section C, *supra*, the Healthcare Plaintiffs sought partial summary judgment that, in the case of Becton's contracts serviced by Distributors as servicing agents, MedStar is a direct purchaser. In these transactions, Becton's distributors are the "bill to" customer. Therefore, because the class definition in the Settlement Agreement defines "direct purchaser" with regard to whether a customer is in the "bill to" field in Becton's electronic sales data, the settling parties are attempting to release Healthcare Plaintiffs' claims. Becton and the Distributors plan to extinguish the powerful direct purchaser claims of the Healthcare Plaintiffs yet, because the Healthcare Plaintiffs are not members of the settlement class a currently defined, they will receive no consideration for the release of these valuable claims.

### b. Absent an Injunction, the Healthcare Plaintiffs Will be Irreparably Harmed

The Distributor Plaintiffs claim that Healthcare Plaintiffs will suffer no harm because the settlement agreement gives the Healthcare Plaintiffs "notice and an opportunity to be heard" in any proceeding where the Distributor Plaintiffs seek a ruling that they are the only direct purchasers under the Clayton Act. As discussed

---

56(f) discovery, the Healthcare Plaintiffs look forward to taking the settling parties at their word and finally setting a meaningful schedule for the conclusion of 56(f) discovery.

above, such paternalism is cold comfort since it replaces an adversarial discovery process that this Court ordered in CMO No. 10 with the proposed entry of a "finding" agreed to by the settling parties alone.

Becton's additional reliance on the availability of protections under Rule 23(e) is particularly ironic, because notice under Rule 23(e) "is designed to summarize the litigation and the settlement and to apprise *class members* of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *In re Prudential Ins. Co.*, 148 F.3d 283, 327 (3d Cir. 1998) (emphasis added). While embracing the purported protections of Rule 23(e), Becton simultaneously contends that Healthcare Plaintiffs' claims are *not* being released by the settlement agreement because they are not members of the class. Thus, while named plaintiffs MedStar and Hebrew Home will receive notice of the settling parties' proposed "findings" because CMO No. 10 requires such notice, thousands of other healthcare provider class members presumably will not receive notice under Rule 23(e).

### c. The Settling Parties Would Not Be Irreparably Harmed by the Entry of An Injunction

On the other hand, the Settling Parties would not be irreparably harmed by the entry of an injunction. The Distributor Plaintiffs claim that "[s]hould this Court grant the [Healthcare Plaintiffs'] motion, BD and the Direct Purchaser Plaintiffs would be prejudiced with regard to proceeding with their settlement

expeditiously." Distributor Opp. at 18. But the obvious reason the settling parties wish their settlement to proceed so "expeditiously" is to circumvent the Court's jurisdiction to litigate the pending summary judgment motions. This Court should not credit the settling parties' desire to quietly settle the direct purchaser issue above the concerns that the Healthcare Plaintiffs' claims are being released without Court-ordered process and for little or no consideration at all. While the Distributors claim a "public interest" in this Court bringing a quick resolution to this standing issue, the process this Court ordered for doing so was through the development of a full record. There is a far greater public interest in having this issue litigated fairly than having it decided as a *quid pro quo* for releasing claims on the cheap.[9]

## Conclusion

WHEREFORE, for the reasons set forth above, the Healthcare Plaintiffs respectfully request that this Court enjoining Becton and the Distributor plaintiffs from presenting for preliminary approval the settlement agreement in its current form, and that the Court grant all other relief that it deems just and appropriate.

---

[9] The Distributors' First Amendment argument makes no sense. The First Amendment does not guarantee the settling parties the right to cram a sham settlement through this Court. *Cf. San Filippo v. Bongiovanni,* 30 F.3d 424, 437 (3d Cir. 1994*)* ("The first amendment interests involved in private litigation -- compensation for violated rights and interests, the psychological benefits of vindication, public airing of disputed facts -- are not advanced when the litigation is based on intentional falsehoods or on knowingly frivolous claims.") (quoting *Bill Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743 (1983)).

Dated:  May 26, 2009

Respectfully submitted,


By:  /s/ James V. Bashian
     James V. Bashian
The Law Offices of James V. Bashian
70 Adams Street, Fourth Floor
Hoboken, New Jersey, 07030
Tel. (973) 227-6330
Fax (201) 488-3330
jbashian@bashianlaw.com

*Liaison Counsel for Healthcare Plaintiffs*

R. Laurence Macon
Akin Gump Strauss Hauer & Feld LLP
300 Convent St., Ste 1500
San Antonio, TX 78205
Telephone:  (210) 281-7000
Facsimile:  (210) 224-2035
lmacon@akingump.com

Richard L. Wyatt
Todd M. Stenerson
Hunton & Williams LLP
1900 K Street, NW
Washington, DC  20006
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201
rwyatt@hunton.com
tstenerson@hunton.com

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Wallace LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603

Telephone: (312) 346-2222
Facsimile: (312) 346-0022
kaw@wexlerwallace.com
jfc@wexlerwallace.com

Judith L. Spanier
Karin E. Fisch
Abbey Spanier Rodd & Abrams, LLP
212 E. 39th St.
New York, NY  10016
Telephone: (212) 889-3700
Facsimile: (212) 684-5191
jspanier@abbeyspanier.com
kfisch@abbeyspanier.com

*Interim Co-Lead Counsel for Healthcare
Plaintiffs*

# CERTIFICATE OF SERVICE

I, James V. Bashian, hereby certify that I caused the foregoing ***Healthcare Plaintiffs' Reply Memo in Support of Their Motion to Issue Injunction Under All Writs Act*** to be filed through the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system. Those attorneys not registered with the Court's electronic filing system will be served via First Class U.S. Mail, with proper postage prepaid, on this 26th day of May, 2009.

/s/ James V. Bashian