COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
Peter S. Pearlman
Park 80 Plaza West-One
Saddle Brook, NJ  07663
Telephone:  (201) 845-9600
Fax:  (201) 845-9423

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

*__"DOCUMENT TO BE FILED ELECTRONICALLY"__*

| | |
|---|---|
| In re: HYPODERMIC PRODUCTS DIRECT PURCHASER ANTITRUST LITIGATION | Master Docket No. 05-1602 (JLL/CCC) |
| ——————————————— THIS DOCUMENT RELATES TO The Consolidated Direct Purchaser Class Actions:  Louisiana Wholesale Drug Company, Inc. (05-1602), Rochester Drug Co-Operative, Inc. (05-1602), JM Smith Corporation (05-1602), Dik Drug Company (05-4465), SAJ Distributors, Inc. (05-5891), American Sales Co., Inc. (06-1204), and Park Surgical Co., Inc. (06-1205) | MDL No. 1730 |

**MEMORANDUM OF LAW IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CERTIFICATION OF THE PROPOSED
DIRECT PURCHASER CLASS, PRELIMINARY APPROVAL
OF PROPOSED SETTLEMENT, APPROVAL OF THE FORM AND
MANNER OF NOTICE TO THE CLASS, AND SETTING OF FINAL
<u>SETTLEMENT SCHEDULE AND HEARING</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

I.      BACKGROUND .............................................................................3

II.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS
        WARRANTED ................................................................................6

        A.     The Proposed Settlement Is The Product Of Good Faith, Extensive,
               Arm's-Length Negotiations.............................................................7

        B.     There Was More Than Sufficient Discovery and Investigation For
               Class Counsel To Make An Informed Decision ...................................10

        C.     The Proponents Of The Settlement Are Highly Experienced In
               Antitrust Litigation ......................................................................11

        D.     Initial Reaction Of Class Members Is Fully Supportive Of The
               Settlement ...................................................................................14

III.    THE COURT SHOULD CERTIFY THE PROPOSED CLASS AND
        APPOINT  CLASS COUNSEL ........................................................15

        A.     The Direct Purchaser Class Should Be Certified ...............................16

        B.     The Requirements of Rule 23(a) Are Satisfied ..................................18

               1.     Numerosity......................................................................18

               2.     Commonality....................................................................19

               3.     Typicality .......................................................................21

               4.     Adequacy of Representation .................................................23

                      a.     Absence of Conflict ..................................................23

                      b.     Qualifications of Counsel ...........................................25

        C.     The Requirements of Rule 23(b)(3) Are Satisfied ..............................26

               1.     Predominance...................................................................27

               2.     Superiority.......................................................................32

      D.    Conclusion..............................................................................33

IV.   APPROVAL OF THE PROPOSED FORM AND MANNER OF NOTICE
      AND THE PROPOSED FINAL SETTLEMENT SCHEDULE LEADING
      UP TO THE FAIRNESS HEARING IS APPROPRIATE ...........................34

V.    CONCLUSION .............................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*,
    247 F.R.D. 156 (C.D. Cal. 2007)........................................................................26

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*,
    No. 2:05-cv-06419-MRP-AJW (C.D. Cal. July 9, 2008)....................................9

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997)...................................................................................16, 27

*Bennett v. Behring Corp.*,
    96 F.R.D. 343 (S.D. Fla. 1982)..........................................................................36

*Bernhard v. TD Bank, N.A.*,
    2009 WL 3233541 (D.N.J. Oct. 5, 2009) ........................................................6, 7

*Blank v. Talley Indus., Inc.*,
    64 F.R.D. 125 (S.D.N.Y. 1974) .........................................................................13

*Bradburn Parent Teacher Store, Inc. v. 3M*,
    513 F. Supp. 2d 322 (E.D. Pa. 2007).................................................................35

*Cascade Health Sol'ns v. PeaceHealth*,
    515 F.3d 883 (9th Cir. 2008) ..............................................................................9

*City of Philadelphia v. American Oil Co.*,
    53 F.R.D. 45 (D.N.J.1971).................................................................................22

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000).........................................................................35

*Cumberland Farms v. Browning-Ferris Indus.*,
    120 F.R.D. 642 (E.D. Pa. 1988).........................................................................33

*Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*,
    523 F.3d 1116 (9th Cir. 2008) ...........................................................................26

*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
   604 F. Supp. 446 (E.D. Pa. 1985)......................................................14

*Georgine v. Amchem Prods., Inc.*,
   83 F.3d 610 (3d Cir. 1996) .............................................................19

*Gold Strike Stamp Co. v. Christensen*,
   436 F.2d 791 (10th Cir. 1970) ........................................................28

*Gottlieb v. Wiles*,
   11 F.3d 1004 (10th Cir. 1993) ........................................................34

*In re Automotive Refinishing Paint Antitrust Litig.*,
   MDL 1426, 2004 WL 1068807 (E.D. Pa. May 10, 2004)....................7

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   1994 WL 663590 (N.D. Ill. Nov. 18, 1994) .....................................32

*In re Bulk Extruded Graphite Products Antitrust Litig.*,
   2006 WL 891362 (D.N.J. April 4, 2006)............................... 24, 28, 33

*In re Buspirone Patent & Antitrust Litig.*,
   No. 01-cv-7951 (JGK) (S.D.N.Y. filed Aug. 24, 2001) ....................12

*In re Cardizem CD Antitrust Litig.*,
   No. 99-md-1278 (NGE) (E.D. Mich. filed June 15, 1999) ................12

*In re Catfish Antitrust Litig.*,
   826 F. Supp. 1019 (N.D. Miss. 1993)...............................................32

*In re Chlorine & Caustic Soda*,
   116 F.R.D. 622 (E.D. Pa. 1987).......................................................33

*In re Community Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005) .....................................................17, 28

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*,
   410 F. Supp. 659 (D. Minn. 1974)...................................................14

*In re Corrugated Container Antitrust Litig.*,
   80 F.R.D. 244 (S.D. Tex. 1978).......................................................33

*In re Endosurgical Direct Purchaser Litig.*,
No. 2:05-cv-08809-JVS-MLG (C.D. Cal. Dec. 31, 2008) ...........................9, 13

*In re Flat Glass Antitrust Litig.*,
191 F.R.D. 472 (W.D. Pa. 1999) ...................................................................21, 23

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ...............................................................................15

*In re Glassine & Greaseproof Paper Antitrust Litig.*,
88 F.R.D. 302 (E.D. Pa. 1980)..........................................................................33

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008) ......................................................................30, 31

*In re Hypodermic Prod. Antitrust Litig.*,
408 F. Supp.2d 1356 (J.P.M.L. 2005) ...............................................................32

*In re Insurance Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009) .............................................................................31

*In re Insurance Brokerage Antitrust Litigation*,
2009 WL 411877 (D.N.J. Feb. 17, 2009), *aff'd*, 79 F.3d 241 (3d Cir.
2009) ...................................................................................................................31

*In re LG/Zenith Rear Projection Television Class Action Litig.*,
2009 WL 455513 (D.N.J. Feb. 18, 2009) ..........................................................30

*In re Linerboard Antitrust Litig.*,
203 F.R.D. 197 (E.D. Pa. 2001), *aff'd*, 305 F.3d 145 (3d Cir. 2002).....19, 22, 28

*In re Metropolitan Life Ins. Sales Practices Litig.*,
1999 WL 33957871 (W.D. Pa. Dec. 28, 1999) .................................................24

In *re Pet Food Products Liability Litigation*,
2008 WL 4937632 (D.N.J. Nov. 18, 2008) .......................................................31

*In re Plastics Additives Antitrust Litigation*,
2009 WL 405522 (3d Cir. Feb. 19, 2009) .........................................................16

*In re Playmobil Antitrust Litig.*,
35 F. Supp. 2d 231 (E.D.N.Y. 1998) .................................................................17

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
    148 F.3d 283 (3d Cir. 1998) ................................................................ 17, 21, 22

*In re Relafen Antitrust Litig.*,
    No. 01-cv-12239 (WGY) (D. Mass. Dec. 18, 2001) ...........................................13

*In re Remeron Antitrust Litig.*,
    No. 03-cv-0085 (FSH) (D.N.J. Jan. 8, 2003).......................................................13

*In re School Asbestos Litig.*,
    789 F.2d 996 (3d Cir. 1986) ........................................................................19, 27

*In re Sugar Antitrust Litig.*,
    559 F.2d 481 (9th Cir. 1977) ..............................................................................24

*In re Sugar Industry Antitrust Litig.*,
    73 F.R.D. 322 (E.D. Pa. 1976)...........................................................................22

*In re Terazosin Hydrochloride Antitrust Litig.*,
    No. 99-md-1317 (PAS) (S.D. Fla. Feb. 25, 2005)...............................................13

*In re Tricor Direct Purchaser Antitrust Litig.*,
    No. 05-cv-00340 (SLR) (D. Del. filed May 27, 2005).........................................13

*In re Tyson Foods Inc.*,
    2003 WL 22316548 (D. Del. Oct. 6, 2003) ........................................................23

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002) ..............................................................24, 30, 32

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ........................................................................passim

*J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*,
    485 F.3d 880 (6th Cir. 2007) ........................................................................12, 26

*Jennings Oil Co. v. Mobil Oil Co.*,
    80 F.R.D. 124 (S.D.N.Y. 1978) ..........................................................................19

*Jerry Enter. of Gloucester Co., Inc. v. Allied Bev. Group, L.L.C.*,
    178 F.R.D. 437 (D.N.J. 1998)...............................................................17, 23, 26

*Jones v. Commerce Bancorp, Inc.*,
2007 WL 2085357 (D.N.J. July 16, 2007) ..........................................................6

*LePage's v. 3M*,
324 F.3d 141 (3d Cir. 2003) ...............................................................................9

*Lerch v. Citizens First Bancorp, Inc.*,
144 F.R.D. 247 (D.N.J. 1992).............................................................................18

*McGee v. Cont'l Tire N. Am.*,
2009 WL 539893 (D.N.J. Mar. 4, 2009) ..........................................................17

*McLendon v. Continental Group, Inc.*,
1986 WL 11789 (D.N.J. Oct. 21, 1986) ............................................................33

*Meijer, Inc. v. Abbott Labs.*,
2008 WL 4065839 (N.D. Cal. Aug. 27, 2008) ............................................12, 26

*Myers v. MedQuist, Inc.*,
2009 WL 900787 (D.N.J. March 31, 2009).......................................................17

*Natchitoches Parish Hosp. Svc. District v. Tyco Int'l*,
247 F.R.D. 253 (D. Mass. 2008)..............................................................9, 12, 26

*Neuberger v. Shapiro*,
110 F. Supp. 2d 373 (E.D. Pa. 2000).................................................................34

*Peters* v. *Nat'l R.R. Passenger Corp.*,
966 F.2d 1483 (D.C. Cir. 1992).........................................................................34

*Retractable Technologies, Inc. v. Becton Dickinson & Co. et al.*,
C.A. No. 01-00036 (DSF) (E.D. Tex. filed Jan. 29, 2001) ...............................11

*Scholes v. Stone, McGuire & Benjamin*,
143 F.R.D. 181 (N.D. Ill. 1992).........................................................................33

*Smith v. Professional Billing & Management Services, Inc.*,
2007 WL 4191749 (D.N.J. Nov. 21, 2007) .........................................................7

*Spark v. MBNA Corp*,
178 F.R.D. 431 (D. Del. 1998) ..........................................................................23

*St. Francis Med. Center v. C.R. Bard, Inc.*,
  2009 U.S. Dist. LEXIS 89166 (E.D. Mo. Sept. 28, 2009) ...................................9

*Stephenson v. Bell Atlantic Corp.*,
  177 F.R.D. 279 (D.N.J. 1997)................................................................19, 22, 28

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) ...............................................................................18

*Szczubelek v. Cendant Mortg. Corp.*,
  215 F.R.D. 107 (D.N.J. 2003)..............................................................................18

*Twigg v. Sears, Roebuck & Co.*,
  153 F.3d 1222 (11th Cir. 1990) ..........................................................................36

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005)..............................................................................13

*Weisfeld v. Sun Chem. Corp.*,
  210 F.R.D. 136 (D.N.J. 2002)..............................................................................27

*Wetzel v. Liberty Mutual Insurance Co.*,
  508 F.2d 239 (3d Cir. 1975) ...............................................................................23

## STATUTES

Sherman Act, 15 U.S.C. §§ 1-2 .................................................................................3

## OTHER AUTHORITIES

Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS (4th ed.
  2002) ..............................................................................................................20, 28

## **PRELIMINARY STATEMENT**

The consolidated Direct Purchaser Plaintiffs,[1] on behalf of the proposed Direct Purchaser Class, through Class Counsel,[2] respectfully submit this Memorandum of Law in Support of Motion for Certification of the Proposed Direct Purchaser Class, Preliminary Approval of Proposed Settlement, Approval of the Form and Manner of Notice to the Class, and Setting of Final Settlement Schedule and Hearing (the "Preliminary Settlement Approval Motion").

After four years of extensive litigation, several months of negotiations (including two mediation sessions with a highly respected private mediator), and after careful consideration of the facts and evidence, applicable law, and litigation risks, the Direct Purchaser Plaintiffs have entered into a proposed settlement (the "Settlement") with defendant Becton, Dickinson and Company ("BD"), providing for the immediate payment of $45 million in cash to Plaintiffs and members of the Direct Purchaser Class (the "Class"),[3] in exchange for dismissal of this litigation

---

[1]  The consolidated Direct Purchaser Plaintiffs, so denominated by CMO 5 (Doc. #33) and CMO 7 (Doc. #75), are Louisiana Wholesale Drug Company, Inc. (05-1602), Rochester Drug Co-Operative, Inc. (05-1602), JM Smith Corporation (05-1602), Dik Drug Company (05-4465), SAJ Distributors, Inc. (05-5891), American Sales Co., Inc. (06-1204), and Park Surgical Co., Inc. (06-1205).   The Direct Purchaser Plaintiffs are sometimes herein referred to simply as "Plaintiffs."

[2] Pursuant to Case Management Order Nos. 5 and 7 (Doc. #25-3 and #75), Class Counsel in the Consolidated Direct Purchaser Class Actions are as follows: Liaison Counsel: Cohn Lifland Pearlman Herrmann & Knopf LLP; Lead Counsel: Garwin Gerstein & Fisher LLP; Executive Committee: Berger & Montague, P.C., Odom & Des Roches LLP, The Smith Foote Law Firm LLP, Hagens Berman Sobol Shapiro, LLP, and RodaNast, P.C.

with prejudice and certain releases from the Class as fully set forth in the Settlement Agreement (attached as Ex. A to Pearlman Approv. Decl.). This is a superior result for the proposed Class, assuring them a substantial benefit while also avoiding the uncertainties and extended delays of continued litigation in this particularly complex antitrust class action case.

Plaintiffs now seek certification of the proposed Direct Purchaser Class, preliminary approval of the proposed Settlement, and request that the Court set into motion the process and schedule to determine whether final approval of the Settlement should be granted, including the setting of a subsequent hearing on final approval ("Fairness Hearing") following dissemination of notice to the Class. This motion for preliminary approval is unopposed by BD.[4]

---

[3] The Direct Purchaser Class as defined in Paragraph 1 of the Settlement Agreement between BD and the Direct Purchaser Plaintiffs is:

> All persons and entities (and assignees of claims from such persons and entities) who (1) purchased BD Hypodermic Products in the United States from BD at any time during the period of March 23, 2001 through the date of this Settlement Agreement (the "Class Period"), and (2) were invoiced by BD for said purchases. The Direct Purchaser Class excludes BD, BD's parents, subsidiaries and affiliates, and United States Government Entities and those persons or entities who are permitted by the Court to opt out of the Direct Purchaser Class.

*See* Ex. A to the Declaration of Peter S. Pearlman, Esq. in Support of Direct Purchaser Plaintiffs' Preliminary Approval Motion ("Pearlman Approv. Decl.") at ¶ 1.

[4] Contemporaneously filed herewith is the Motion of the Direct Purchaser Plaintiffs that the Court Make Particular Findings Relating to Direct Purchaser Standing, Or In the Alternative for Partial Summary Judgment (the "Motion Regarding Direct Purchaser Standing"), upon the Court's granting of which the proposed Settlement depends.

# I.      BACKGROUND

The Consolidated Direct Purchaser Class Actions were brought by a class composed of direct purchasers of various Hypodermic Products from BD ("BD Hypodermic Products"). [5] Among other things, Plaintiffs alleged that BD illegally acquired and maintained monopoly power in certain markets for BD Hypodermic Products by engaging in an exclusionary contracting and bundled pricing scheme, causing Plaintiffs to pay higher prices for the BD Hypodermic Products than they otherwise would have paid absent BD's conduct.  Plaintiffs claimed that BD's conduct violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2.

Specifically, Plaintiffs alleged that BD's conduct included, *inter alia*, entering into agreements imposing market share purchase requirements on hospitals or other health-care entities, bundling its products for exclusionary purposes, conspiring with Group Purchasing Organizations ("GPOs") to impose exclusionary contracts, and conspiring with other manufacturers to impose rebate penalties on purchasers relating to a bundle of various unrelated products. Plaintiffs alleged that the cumulative effect of these practices has been (a) to foreclose manufacturers competing with BD Hypodermic Products from a

---

[5] For purposes of the Settlement, "BD Hypodermic Products" are products sold by BD in the following device categories: (a) safety and conventional hypodermic needles and syringes; (b) safety and conventional blood collection devices; (c) safety and conventional IV catheters, including winged IV catheters; and (d) safety and conventional insulin delivery devices.  *See* Pearlman Approv. Decl. Ex. A, ¶ 1.

substantial portion of the respective markets; (b) to prevent these competing manufacturers from gaining market share, achieving economies of scale and scope, and thereby from driving down prices for BD Hypodermic Products; (c) thereby causing the Class to incur overcharges for BD Hypodermic Products.

BD has denied Plaintiffs' allegations of unlawful or improper conduct, has denied Plaintiffs' and the Class's entitlement to damages or any other relief, and has asserted numerous defenses. BD argues that its conduct was at all times lawful competition on the merits that has caused no harm to competition, the public, or to the Plaintiffs or members of the Class.

The proposed Settlement was reached after extensive arm's-length negotiations occurring over the course of several months, including two mediation sessions. Further, this Settlement was reached only after Class Counsel aggressively litigated this case for four years by: (a) engaging in extensive background research and discovery from BD and various third parties, including the receipt and careful review of over 2.5 million pages of documents, several large transactional data sets covering all sales and rebates of relevant products from 2000-2007, and cost and other financial data; (b) working with experienced economic experts on issues relating to liability and damages; (c) litigating numerous substantive and procedural matters before this Court, including a motion

to dismiss, numerous discovery motions, and the pending summary judgment motion on the issue of direct purchaser standing under the Clayton Act.

As noted above, the Settlement provides for an immediate cash payment of $45 million to Plaintiffs and the Class in exchange for dismissal of the Consolidated Direct Purchaser Class Actions with prejudice and certain releases from the Class fully set forth in paragraphs 13 and 14 of the Settlement Agreement. *See* Pearlman Approv. Decl. at Ex. A.

Rule 23(e) of the Federal Rules of Civil Procedure provides that any proposed class action settlement must be approved by the Court. If the Court grants the instant request for preliminary approval, that process, which includes sending notice of the proposed Settlement to the Class members by first class mail based on addresses obtained from BD's electronic sales data, will be set in motion.[6] Accordingly, the present motion seeks entry of the [Proposed] Order Preliminarily Approving Direct Purchaser Class's Proposed Settlement, Authorizing Notice to the Class, and Setting Final Settlement Schedule and Hearing, attached as Ex. C to the Pearlman Approv. Decl.[7]

---

[6] The proposed Notice is attached as Ex. B to the Pearlman Approv. Decl. BD has reviewed and agreed to the proposed form and manner of this Notice, which is also Exhibit B to the Settlement Agreement.

[7] BD has reviewed and agreed to the proposed form and manner of this proposed Order, a substantially identical version of which is also Exhibit A to the Settlement Agreement.

## II.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

"Review of a proposed class action settlement is a two-step process: [1] preliminary approval and [2] a subsequent fairness hearing." *Bernhard v. TD Bank, N.A.*, 2009 WL 3233541, *1 (D.N.J. Oct. 5, 2009) (citation omitted). "Courts make a preliminary evaluation of the fairness of the settlement prior to directing that notice be given to members of the settlement class." *Id.* (citation omitted). "Preliminary approval is not binding, and it is **granted unless a proposed settlement is obviously deficient**." *Id.* (citing *Manual for Complex Litigation,* Third, § 30.42 (West 1995) ("[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery") and *id.* § 30.41 ("[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted")) (emphasis added). *See also Jones v. Commerce Bancorp, Inc.*, 2007 WL 2085357, *2 (D.N.J. July 16, 2007) (same).

Accordingly, in considering whether to grant preliminary approval, the Court is *not* required to make a final determination of the adequacy of the Settlement or to delve extensively into its merits. *See In re Automotive Refinishing*

6

*Paint Antitrust Litig.*, MDL 1426, 2004 WL 1068807, at \*1-2 (E.D. Pa. May 10, 2004) (distinguishing between preliminary approval and final approval) (citing *Manual for Complex Litigation (Fourth)* § 21.632 (2004)). The fairness, reasonableness, and adequacy of a proposed class action settlement are questions reserved for the final approval stage. *Id.* Nor will any Class member's substantive rights be prejudiced by preliminary approval, since preliminary approval is solely to obtain authority for notifying the Class of the terms of the Settlement and to set the stage for the final approval of the Settlement. *Id.*[8]

Preliminary approval is granted "when the court finds that: (1) the parties' negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigations; and (4) only a small fraction of the class objected." *Smith v. Professional Billing & Management Services, Inc.*, 2007 WL 4191749, \*1 (D.N.J. Nov. 21, 2007).

### A.    The Proposed Settlement Is The Product Of Good Faith, Extensive, Arm's-Length Negotiations

That a proposed settlement was reached after a private mediation supports the inference of serious, arm's-length negotiations. *Bernhard*, 2009 WL 3233541, at \*2 (emphasis added). Such was the case here. The proposed settlement resulted from extensive arm's-length negotiations undertaken in good faith between Class

---

[8] Thus, only after notice to the Class and an opportunity for Class members to object to the proposed settlement or otherwise be heard, will the Court determine whether the settlement is fair, reasonable, and adequate and whether the settlement should be finally approved under Fed. R. Civ. P. 23(e).

Counsel and counsel for BD over the course of several months, including multi-day mediation sessions with a highly experienced mediator in November 2008 and January 2009.[9]  Further, settlement negotiations were not even begun until after more than three years of intense litigation, during which time Plaintiffs and BD engaged in extensive discovery and motion practice, including the full briefing and ultimate denial of BD's motion to dismiss Plaintiffs' claims.  Through the course of this litigation process and during the two mediation sessions, Plaintiffs (with the guidance of two separate economic consultants) and BD became intimately aware of the strengths and weaknesses of their respective positions.  The narrowing of issues that naturally occurred during pretrial motion practice and discovery enabled the parties to finally reach a settlement. The parties scrutinized the strengths and weaknesses of the pending claims, including consideration of, among other issues, class certification, liability, causation, and damages.  The parties engaged in intensive bargaining over the merits and the value of Plaintiffs' claims, and the merits of BD's defenses.  Because of the extensive, arm's-length bargaining involved, there was no collusion in reaching the proposed Settlement.

The proposed $45 million cash Settlement is substantial, both in absolute terms and in light of the difficult factual and legal issues underlying the case.

---

[9] The private mediator was David Geronemus, Esq., a nationally-known authority in dispute resolution.  His professional biography is available at http://www.cpradr.org/tabid/197/p/13943/default.aspx.

Those circumstances include the unsettled state of the law. For example, two recent cases challenging similar conduct have been dismissed on summary judgment,[10] while two recent decisions have upheld the legal basis for these claims in certain (increasingly narrow) circumstances.[11] Also, one other case challenging similar conduct was recently settled for $13 million.[12] Moreover, Plaintiffs performed an extensive review of the documents and data produced in discovery in this case, including detailed analysis of the terms of the contracts comprising the alleged exclusionary contracting scheme, and propose this Settlement in light of their evaluation in light of that review.

The proposed Settlement is also highly favorable to the Class in that it enables Class members to receive the immediate benefit of the $45 million in cash while avoiding the considerable uncertainties and risks inherent in the multiple litigation hurdles and delays remaining in this complex antitrust class action. Even

---

[10] *See St. Francis Med. Center v. C.R. Bard, Inc.*, 2009 U.S. Dist. LEXIS 89166 (E.D. Mo. Sept. 28, 2009); *Allied Orthopedic Appliances, Inc. v. Tyco Health Care Group L.P.,* No. 2:05-cv-06419-MRP-AJW (C.D. Cal. July 9, 2008). *See also J.B.D.L. Corp. v. Wyeth-Ayerst Labs.*, Inc., 2005 WL 1396940 (S.D. Ohio June 13, 2005) (summary judgment granted).

[11] *Natchitoches Parish Hosp. Service Dist. v. Tyco Intern., Ltd.*, 2009 WL 4061631 (D. Mass. Nov. 20, 2009); *Masimo Corp. v. Tyco Health Care Group, L.P.*, 2009 WL 3451725 (9th Cir. Oct. 28, 2009). *See also Cascade Health Sol'ns v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008) (rejecting *LePage's v. 3M*, 324 F.3d 141 (3d Cir. 2003) and setting forth discount attribution test). Given its recency, the *Nachitoches* decision contains a particularly useful survey of the law in this area.

[12] *See In re Endosurgical Direct Purchaser Antitrust Litig.*, No. 05-8809, Civil Minutes – General, Document #195 (C.D. Cal. May 11, 2009) (Ex. D to Pearlman Approv. Decl.).

assuming Plaintiffs were to be successful in navigating and litigating this action past dispositive motions practice, through trial, and through subsequent appeals, such a course of action would have required many more years of litigation before final resolution and receipt of any funds. Plaintiffs respectfully submit that, when compared to the significant and enduring risk of litigation to final resolution, the certain receipt now of $45,000,000 in cash is more than sufficient to establish an initial presumption of a fair settlement.

### B.   There Was More Than Sufficient Discovery and Investigation For Class Counsel To Make An Informed Decision

Class Counsel spent considerable time investigating the facts of this case prior to filing suit on March 23, 2005.  This investigation included, among other things, extensive meetings with the named Class representatives; reviewing transactional data related to the purchase of BD Hypodermic Products; and conducting extensive industry and economic research on (1) the interactions between medical device manufacturers, such as BD, with GPOs, and (2) single manufacturer and multi-manufacturer bundling practices.

Since then, Plaintiffs and BD have engaged in extensive, often contentious discovery and motion practice, with document and data production continuing right up to the first mediation session in November 2008. Over this time, Class Counsel reviewed over 2.5 million pages of documents produced by BD and third parties, and extensively analyzed, with the assistance of experts, approximately eight years

of BD sales, rebate, and cost data, plus market-wide data from third parties.[13]  This extensive review process and factual development assisted Class Counsel and their consulting experts to evaluate the chances of success on important elements of their case, including the exclusionary nature and foreclosing power of the contractual provisions at issue, other liability issues, causation, and damages. Significantly, counsel and a corporate representative of Cardinal Health, Inc., the Class member with the most purchases of BD Hypodermic Products (and therefore the largest stakeholder in this litigation) actively participated in the mediation and concluded, after observing the parties' evidential and legal presentations, that the settlement was fair and reasonable.

## C.   The Proponents Of The Settlement Are Highly Experienced In Antitrust Litigation

The Class is represented by lawyers who have extensive antitrust class action experience.   Class Counsel and other firms representing the Direct Purchaser Class have been on the forefront of medical device and pharmaceutical antitrust litigation for many years, and also have vast experience with complex

---

[13] Plaintiffs' liability expert in this matter, Professor Einer Elhauge, was intimately familiar with the matter after having served as the plaintiff's expert in *Retractable Technologies, Inc. v. Becton Dickinson & Co. et al.*, C.A. No. 01-00036 (DSF) (E.D. Tex. filed Jan. 29, 2001), which was an antitrust case brought by one of BD's allegedly-excluded competitors who had made allegations similar to those in this case.  Professor Elhauge has also written extensively on the antitrust and economic implications of the conduct that Plaintiffs had alleged against BD.  *See, e.g.,* Einer Elhauge, *Tying, Bundled Discounts, and the Death of the Single Monopoly Profit Theory, 123 Harvard Law Review 397 (2009); A*ntitrust Analysis of GPO Exclusionary Agreements, Comments Regarding Hearings on Health Care and Competition Law and Policy – Statement for DOJ-FTC Hearing on GPOs (Sept 26, 2003) (available at http://www.law.harvard.edu/faculty/elhauge/pdf/statement_ftcdoj.pdf).

litigation generally.   Indeed, over the past ten years, Class Counsel have represented certified classes of direct purchasers in numerous antitrust cases relating to alleged monopolists' exclusion of rival manufacturers from various markets in both the medical device and pharmaceutical industries, including by the use of exclusionary contracting practices. *See, e.g.*, *Natchitoches Parish Hosp. Svc. District v. Tyco Int'l*, 247 F.R.D. 253 (D. Mass. 2008) (certifying a class of direct purchasers of medical devices alleging exclusionary contracting practices); *Meijer, Inc. v. Abbott Labs.*, 2008 WL 4065839 (N.D. Cal. Aug. 27, 2008) (Class Counsel obtained certification of direct purchaser class alleging that Abbott's bundled pricing of combination AIDS drug illegally excluded less-expensive competitors from the market ("*Norvir*"); *J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 485 F.3d 880 (6th Cir. 2007) (affirming summary judgment for defendant in certified class action alleging exclusionary contracting practices); *In re Cardizem CD Antitrust Litig.*, No. 99-md-1278 (NGE) (E.D. Mich. filed June 15, 1999), Order No. 43 (granting motion for preliminary approval of proposed settlement and for approval of the form and manner of notice to the class) and Order No. 47 (granting motion for final approval) (Pearlman Approv. Decl. Exs. E & F); *In re Buspirone Patent & Antitrust Litig.*, No. 01-cv-7951 (JGK) (S.D.N.Y. filed Aug. 24, 2001), Doc. 18 (order preliminarily approving direct purchaser Class Settlement and authorizing notice to be sent to the Class) and Doc. 22 (order granting motion for final

approval) (Pearlman Approv. Decl. Exs. G & H) ; *In re Relafen Antitrust Litig.*, No. 01-cv-12239 (WGY) (D. Mass. filed Dec. 18, 2001), Docs. 286, 297 (same) (Pearlman Approv. Decl. Exs. I & J); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-md-1317 (PAS) (S.D. Fla.), Docs. 1528, 1557 (same) (Pearlman Approv. Decl. Exs. K & L); *In re Remeron Antitrust Litig.*, No. 03-cv-0085 (FSH) (D.N.J. filed Jan. 8, 2003), Docs. 181, 185 (same) (Pearlman Approv. Decl. Exs. M & N); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-cv-00340 (SLR) (D. Del. filed May 27, 2005), Docs. 529, 543 (same) (Pearlman Approv. Decl. Exs. O & P). *See also In re Endosurgical Direct Purchaser Litig.*, No. 2:05-cv-08809-JVS-MLG (C.D. Cal. Dec. 31, 2008) (Doc. 181) (class counsel challenged settlement of exclusionary contracting antitrust case as insufficient) (Pearlman Approv. Decl. Ex. Q). Thus, Class Counsel are well versed in the prosecution, evaluation, and settlement of this type of antitrust litigation.

In approving class action settlements, courts have repeatedly and explicitly deferred to the judgment of experienced counsel who have conducted arm's-length negotiations. *See, e.g., Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness") (citations omitted); *Blank v. Talley Indus., Inc.*, 64 F.R.D. 125, 132 (S.D.N.Y. 1974) (a factor "entitled to substantial weight is that the settlement bears the imprimatur of seasoned and experienced counsel"); *Fisher*

*Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985) ("the professional judgment of counsel involved in the litigation is entitled to significant weight"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 410 F. Supp. 659, 667 (D. Minn. 1974) ("[t]he recommendation of experienced antitrust counsel is entitled to great weight"). The presumption in favor of such settlements reflects the understanding that vigorous, skilled negotiation protects against collusion and advances the fairness interests of Rule 23(e).

### D.   Initial Reaction Of Class Members Is Fully Supportive Of The Settlement

Although formal notice of settlement has not yet been sent, in addition to speaking with and receiving explicit approval and support from the named Class Representatives, Class Counsel conducted both mediation sessions in full coordination with counsel for the largest absent Class member, Cardinal Health, Inc.,[14] who was present during   all mediation sessions, consulted with Class Counsel throughout, and is fully supportive of the proposed Settlement.  BD's third-largest purchaser of Hypodermic Products, McKesson Corporation, has also authorized Plaintiffs to represent to the Court, through its inside counsel, that it, too, is fully supportive of the proposed Settlement.[15]

---

[14]  Cardinal Healthcare, Inc., which purchased approximately 30% of the BD Hypodermic Products involved in this case, was represented at each mediation session by its longtime antitrust counsel Thomas Long, Esq., of Baker & Hostetler, LLP.
[15] McKesson Corporation purchased approximately 11% of the BD Hypodermic Products at issue in this case.

**III.    THE COURT SHOULD CERTIFY THE PROPOSED CLASS AND APPOINT CLASS COUNSEL**

Class actions certified for the purposes of settlement are well recognized under Rule 23. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995). The *Manual for Complex Litigation (Fourth)* advises district courts, in connection with motions for preliminary approval of settlements, to make a "preliminary determination" that a proposed class for purposes of settlement satisfies Rule 23 of the Federal Rules of Civil Procedure. *See* Manual § 21.632. This portion of Plaintiffs' motion for preliminary approval of the proposed Settlement will allow the Court to make such a determination.

The Settlement Agreement contemplates the certification of a Class defined as:

> All persons and entities (and assignees of claims from such persons and entities) who (1) purchased BD Hypodermic Products in the United States from BD at any time during the period of March 23, 2001 through the date of this Settlement Agreement (the "Class Period") and (2) were invoiced by BD for said purchases. The Direct Purchaser Class excludes BD, BD's parents, subsidiaries and affiliates, and United States Government Entities and those persons or entities who are permitted by the Court to opt out of the Direct Purchaser Class.

Settlement Agreement, ¶ 1 (Pearlman Approv. Decl. Ex. A). The Settlement Agreement is dated April 27, 2009, which fixes the end date for the Class Period. *Id.* at 1. The Settlement Agreement makes clear that Class members are limited to

"entities who appear in the 'bill to' or 'sold to' fields of BD's electronic sales data" (data which was produced by BD to Plaintiffs in the course of discovery), and that the claims of such Class members that are compromised in the Settlement Agreement are limited to those purchases for which Class members appear as the "bill to" or "sold to" entities in that data (defined as "Class Purchases"). *Id.* Thus, even though "a settlement class may be defined more broadly than a class certified for litigation purposes," *In re Plastics Additives Antitrust Litigation*, 2009 WL 405522, *1 (3d Cir. Feb. 19, 2009) (citing *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 620 (1997)), it is clear that Plaintiffs have defined the Class narrowly and with particularity.

### A.   The Direct Purchaser Class Should Be Certified

Plaintiffs seek to certify the Direct Purchaser Class in light of settlement, not for trial. The Third Circuit has recently compared the application of Rule 23 in the settlement and trial context:

> [T]he same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class. *See Amchem*, 521 U.S. at 620, 117 S.Ct. 2231 (in a settlement-only class certification, "a district court need not inquire whether the case, if tried, would present intractable management problems ... for the proposal is that there be no trial").

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004) (affirming certification of class in light of settlement) ("*In re Warfarin*"). *See also In re*

*Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 308 (3d Cir. 1998) (same) ("*In re Prudential*").   Even more recently, another court in this District, while rendering a decision on whether a class should be certified for settlement purposes, discussed the Third Circuit's emphasis of adequacy of representation in analyzing settlement classes:

> In short, the Court must satisfy itself that the Rule 23(a) and 23(b)(3) criteria are met . . . with the principal focus on whether a proposed [settlement] class has sufficient unity so that absent members can fairly be bound by decisions of class representatives.

*Myers v. MedQuist, Inc.*, 2009 WL 900787, *6 (D.N.J. March 31, 2009) (citing *In re Community Bank of N. Va.*, 418 F.3d 277, 299-300 (3d Cir. 2005)).   *See also McGee v. Cont'l Tire N. Am.*, 2009 WL 539893, *8-12 (D.N.J. Mar. 4, 2009) (certifying settlement class).

Even outside of the settlement context, courts in this district and elsewhere have recognized that a class action is considered a "particularly appropriate" method for the litigation of federal antitrust actions.   *Jerry Enter. of Gloucester Co., Inc. v. Allied Bev. Group, L.L.C.*, 178 F.R.D. 437, 446 (D.N.J. 1998) (citation omitted).   *See also In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998) ("particularly appropriate").

Below, Plaintiffs demonstrate satisfaction of each element of Rule 23(a) and Rule 23(b)(3).

## B.   The Requirements of Rule 23(a) Are Satisfied

### 1.   *Numerosity*

Under Fed. R. Civ. P. 23(a)(1), Plaintiffs must only demonstrate that the proposed class is so numerous that joinder is impracticable; the rule does not require impossibility and does not require precise enumeration of class size.  *See Lerch v. Citizens First Bancorp, Inc.*, 144 F.R.D. 247, 250 (D.N.J. 1992).  As the Third Circuit has observed, "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Stewart v. Abraham*, 275 F.3d 220, 227-28 (3d Cir. 2001).  Class certification is particularly appropriate where, as here, the class members are from disparate geographical areas.  *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 116-17 (D.N.J. 2003).

Here, the Class consists of all entities that purchased specifically-defined BD Hypodermic Products from BD, and were invoiced by BD for said purchases, over a period extending from March 23, 2001 through and including April 27, 2009. Such entities are those who appear in the "bill to" or "sold to" fields of BD's electronic sales data.  Counsel for Plaintiffs are fully familiar with BD's electronic sales data produced in discovery in this case, and estimate that the number of entities who appear in the "bill to" or "sold to" fields of BD's electronic sales data

for BD Hypodermic Products approaches 2,000. The numerosity requirement is therefore satisfied.

### 2. *Commonality*

Fed. R. Civ. P. 23(a)(2) requires that there be "questions of law or fact common to the class." The Third Circuit has set "a very low threshold for commonality." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) (citations omitted); *In re School Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986). "Rule 23(a)(2)'s commonality element requires [merely] that the proposed class members share at least one question of fact or law in common with each other." *In re Warfarin*, 391 F.3d at 527-28 (affirming certification of settlement class). This standard is easily met in an antitrust case alleging conspiracy or other anticompetitive conduct. *See In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205-06 (E.D. Pa. 2001), *aff'd*, 305 F.3d 145 (3d Cir. 2002); *see also Mercedes*, 213 F.R.D. at 184-85 ("[a]s is generally held to be the case, here the allegation of conspiracy in a class action context raises a central issue that will establish common questions of both law and fact"); *Stephenson v. Bell Atlantic Corp.*, 177 F.R.D. 279, 286-88 (D.N.J. 1997) (same); *Jennings Oil Co. v. Mobil Oil Co.*, 80 F.R.D. 124, 128 (S.D.N.Y. 1978) ("[t]he monopolization claims are contingent upon a showing of monopoly power and an examination of the manner in which such power was acquired or maintained. . . . These issues, along with others, are

questions that are undoubtedly common to all the members of the putative class")
(citation omitted). *See generally*, 1 Herbert Newberg & Alba Conte, NEWBERG ON
CLASS ACTIONS § 3:10 (4th ed. 2002) ("[i]n an antitrust action on behalf of
purchasers who have bought the defendants' products at prices that have been
maintained above competitive levels by unlawful conduct, the courts have held that
the existence of an alleged conspiracy or monopoly is a common issue that will
satisfy the Rule 23(a)(2) prerequisite"); 6 Alba Conte & Herbert Newberg,
NEWBERG ON CLASS ACTIONS § 18:5 & n.9 (4th ed. 2002) (monopoly allegations
establish common question requirement).

Common issues of law and fact are abundant here, where Plaintiffs have
alleged that BD engaged in an overarching scheme to impede competition. The
Court has already reviewed Plaintiffs' allegations of BD's anticompetitive conduct
and its alleged marketwide and classwide effects. *See* Doc. #181 at 4-8. Several
common questions of law and fact created by those allegations are identified in the
margin.[16] Rule 23(a)(2) is clearly satisfied, therefore.

---

[16] The common questions of law and fact include whether BD obtained and maintained monopoly
power in the markets  for the Relevant Hypodermic Products in the United States; whether BD
obtained and/or maintained monopoly power in the relevant markets through anti-competitive
and unlawful activity; whether BD engaged in agreements, contracts, combinations, and
conspiracies, which had the purpose and/or effect of unreasonably restraining competition and
limiting purchaser access to competing Relevant Hypodermic Products; and whether BD's sole-
source contracts with GPOs, as part of its overall scheme to monopolize, have resulted in
unreasonable restraints on trade and competition, among others.

### 3.    *Typicality*

Rule 23 requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." *See* Rule 23(a)(3).  "Typicality lies where there is a strong similarity of legal theories, or where the claims of the representative plaintiffs and the rest of the class arise from the same alleged conduct by the defendants." *Mercedes*, 213 F.R.D. at 185 (citation omitted).  However,

> Typicality does not require that the claims of the named plaintiffs be identical to those of the proposed class members. * * * Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory. * * * [W]hile the Court must ensure that the interests of the plaintiffs are congruent, the Court will not reject the plaintiffs' claim of typicality on speculation regarding conflicts that may arise in the future.

*Id.* (citations and quotations omitted).  *See also In re Prudential*, 148 F.3d at 311 (because named plaintiffs and members of proposed settlement class all had claims arising from defendant's overarching scheme, typicality was satisfied even though some class members alleged different types of claims); *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 480 (W.D. Pa. 1999) (same).

This Court previously has stated that "[f]or purposes of class certification, direct purchasers that have suffered overcharges have an antitrust injury and would be entitled to recover the full amount of the overcharge they paid." *See* Doc. #98, at 11.  And indeed, in this case, all Class members' claims arise out of an alleged

common wrong that has caused Class members to be overcharged:  BD's core pattern of alleged anticompetitive conduct which, if true, would have similarly injured each of the Class members by artificially raising or stabilizing the price of BD's Hypodermic Products.  *E.g.*, Compl. ¶¶ 59-100 (alleged illegal conduct), 101-108 (classwide anticompetitive effects of BD's conduct), 109 (classwide damages from BD's conduct) (Doc. #77).  *See also* Compl. ¶¶ 101-09, 115-17, 122, 128 (BD's conduct is alleged to have raised the prices of BD's Hypodermic Products to all Class members); Doc. #181 at 4-8 (this Court's review of Plaintiffs' allegations about BD's conduct and its marketwide effects).

"Since all members of the class would need to demonstrate the existence of [BD's] scheme, their interests are sufficiently aligned that the class representatives can be expected to adequately pursue the interests of the absentee class members. *In re Prudential*, 148 F.3d at 312 (affirming certification of settlement class).  *See also In re Sugar Industry Antitrust Litig.*, 73 F.R.D. 322, 336 (E.D. Pa. 1976) (typicality met in antitrust action because each class representative and absent class member seeks to prove same ultimate facts); *Mercedes*, 213 F.R.D. at 185 (same); *Stephenson*, 177 F.R.D. at 285-86 (same); *In re Linerboard Antitrust Litig.*, 203 F.R.D. at 207 (same); *City of Philadelphia v. American Oil Co.*, 53 F.R.D. 45, 68 (D.N.J.1971) ("[w]hat is alleged here is an overall conspiracy affecting all prices. Thus, the proof needed to demonstrate this will be the same irrespective of whether

one purchased in five hundred gallon quantities or from retail service stations"). The typicality requirement of Rule 23(a)(3) is therefore satisfied.

### 4.    *Adequacy of Representation*

In this Circuit, "[a]dequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation,[17] and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir. 1975).  A single adequate representative plaintiff suffices, even if more than one is proffered.  *Jerry Enter.*, 178 F.R.D. at 446 n.5 (citation omitted).    The adequacy requirement of Rule 23(a)(4) is clearly satisfied here.

### a.    <u>Absence of Conflict</u>

To be cognizable, a conflict between the proposed class representatives and absent class members must be "real." *In re Tyson Foods Inc.*, 2003 WL 22316548, at *6 (D. Del. Oct. 6, 2003); *Spark v. MBNA Corp*, 178 F.R.D. 431, 436 (D. Del. 1998) ("express").  Speculative and hypothetical conflicts are *not* cognizable.  *See Flat Glass*, 191 F.R.D. at 482 (courts have "rejected efforts . . . to defeat certification by raising the possibility of hypothetical conflicts or antagonisms among class members" and have declined to consider conflicts sufficient to defeat class "unless the conflict is apparent, imminent, and on an issue at the very heart of

---

[17] This portion of the adequacy test is governed by Fed. R. Civ. P. 23(g), relating to "Class Counsel," which appears mainly to codify existing practice with regard to the naming of Class Counsel.  As shown below, Class Counsel here clearly satisfy this test.

the suit"); *In re Sugar Antitrust Litig.*, 559 F.2d 481, 484 (9th Cir. 1977) (same). A court in this district recently observed that defense arguments that purported intra-class conflicts should defeat class certification "are unavailing except in the rarest of cases":

> Indeed, courts are generally skeptical of defenses to class certification based on conflicts between the proposed class members. The mere fact that a representative plaintiff stands in a different factual posture is not sufficient to refuse certification. The atypicality or conflict must be clear and must be such that the interests of the class are placed in significant jeopardy. * * * [T]he evidence of a conflict between class members [must be] apparent, imminent, and so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation.

*In re Bulk Extruded Graphite Prods. Antitrust Litig.*, 2006 WL 891362, *8 (D.N.J. April 4, 2006) (citations omitted). Thus, adequacy of representation and the absence of conflict are found where "[t]he named plaintiffs share a strong interest in establishing liability of defendant, seeking the same type of damages (compensation for overpayment) for the same type of injury (overpayment for [the product at issue]." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 251 (D. Del. 2002) (certifying settlement class). *See also In re Metropolitan Life Ins. Sales Practices Litig.*, 1999 WL 33957871, at *21 (W.D. Pa. Dec. 28, 1999) ("so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes").

Here, each Class member has the same interest as each Class representative in establishing BD's liability, and each seeks the same type of damages (overcharges) for the same type of injury (overpayment for BD Hypodermic Products).  Compl. ¶¶ 101-09, 115-17, 122, 128 (Doc. #77).  By pursuing this litigation on their behalf, then, the representative Plaintiffs necessarily advance the common interests of the entire Class.  This Court, in previously rejecting BD's argument that a cognizable conflict might exist between and among members of the Direct Purchaser Class, has previously decided this was the case.  *See* Doc. #98, at 11 ("[f]or purposes of class certification, direct purchasers that have suffered overcharges have an antitrust injury and would be entitled to recover the full amount of the overcharge they paid").[18]

Thus, because all class members "share[] the same goal of establishing the liability of [BD], suffered the same injury resulting from the overpayment for [BD Hypodermic Products], and [seek] essentially the same damages by way of compensation for overpayment," adequacy of representation is met.  *In re Warfarin*, 391 F.3d at 532.

### b.    <u>Qualifications of Counsel</u>

To demonstrate the qualification of counsel, "firm resumes [demonstrating that plaintiffs' counsel] possess the competence, skill, and experience necessary to

---

[18] As this Court previously indicated, if there are Class members who believe the representative Plaintiffs are not advancing the common interests of the entire Class, "members are free to exclude themselves from the case by affirmatively opting out."  Doc. #98, at 7.

the prosecution of the class claims" suffice. *Jerry Enter.*, 178 F.R.D. at 446. This standard is met. Proposed class counsel have extensive experience and expertise in antitrust, class action, and complex civil litigation, and have successfully prosecuted antitrust class actions and other similar cases in courts in this district and throughout the United States. Indeed, many of the Class counsel here are involved in prosecuting a number of other antitrust actions alleging improper bundled pricing and exclusionary contracting schemes in the medical device and pharmaceutical industries, which are either currently pending, settled, or otherwise concluded.[19] Under Rule 23(g), then, proposed class counsel should be appointed as counsel for the class.

## C.    The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) requires (1) that the Court find that common questions of law *or* fact predominate over individual questions; and (2) that a class action is superior to other available methods of adjudication. This Court has recognized that merely

---

[19] Lead Counsel for the Direct Purchaser Class (Garwin, Gerstein & Fisher, L.L.P.) and Executive Committee members Berger & Montague, P.C., Odom & Des Roches, LLP, and other of the firms acting as class counsel, have been class counsel in the following antitrust actions seeking overcharge damages involving allegations of anticompetitive bundled pricing and exclusionary contracting schemes by monopolists: *J.B.D.L. Corp. v. Wyeth-Ayerst Laboratories, Inc.*, 485 F.3d 880 (6th Cir. 2007); *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.,* 247 F.R.D. 156 (C.D. Cal. 2007); *Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116 (9th Cir. 2008); *Natchitoches Parish Hosp. Service Dist. v. Tyco Intern., Ltd.*, 247 F.R.D. 253 (D. Mass. 2008); *Meijer, Inc. v. Abbot Laboratories*, 2008 WL 4065839 (N.D. Cal. 2008). The resumes of proposed class counsel are attached to the Pearlman Approv. Decl. as Exhibits R through U, respectively. Liaison Counsel for the Direct Purchaser Class (Cohn Lifland Pearlman Hermann & Knopf LLP) has extensive class action experience, as well. The resume of proposed liaison counsel for the Class is attached to the Pearlman Approv. Decl. as Exhibit V.

a few common questions will satisfy the issue of predominance. *See* Doc. #98 at 19 ("[t]o evaluate predominance, the Court must determine whether the efficiencies gained by class resolution of the common issues are outweighed by individual issues presented for adjudication. * * * Courts have readily held that even a few common issues can satisfy this requirement where their resolution will significantly advance the litigation") (citations and quotations omitted); *In re School Asbestos Litig.*, 789 F.2d at 1010 (even a few common issues may satisfy predominance requirement if resolution of issues "will so advance the litigation that they may fairly be said to predominate"). In other words, "[t]he requirement that common questions of law or fact predominate over individual issues does not mean that the existence of individual issues defeats certification." *Weisfeld v. Sun Chem. Corp.,* 210 F.R.D. 136, 141 (D.N.J. 2002). *See also Mercedes*, 213 F.R.D. at 186 ("[t]he mere existence of individual issues will not of itself defeat class certification").

### 1.    *Predominance*

The predominance requirement is readily met in antitrust actions, like this one, involving a common course of anticompetitive conduct. *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 625 (1997). In particular, courts in this Circuit and others have found in many cases that monopolization and conspiracy claims, such as those at issue here, involve predominantly common issues, and are thus well-

suited for class treatment. *See, e.g., In re Warfarin*, 391 F.3d at 528 (§ 2 monopolization claim "naturally raise[d] several questions of law and fact common to the entire class and which predominate over any issues related to individual class members," including the unlawfulness of the defendant's conduct, the causal linkage between the defendant's conduct and the injury suffered by the class members, and the nature of the relief to which class members are entitled) (certifying settlement class); *Linerboard*, 305 F.3d at 152 (§ 1 conspiracy claim would predominantly involve common issues of fact and law); *Gold Strike Stamp Co. v. Christensen,* 436 F.2d 791, 795 (10th Cir. 1970) (monopolization case "superbly suited for class action"); *Stephenson v. Bell Atlantic Corp.*,177 F.R.D. 279, 288 (D.N.J. 1997) ("[b]ecause each member must make the same showing of anticompetitive conduct and monopolistic pricing in order to prevail on her antitrust claims, the manner of proof will not vary, and individual issues of fact and law do not predominate"). *See generally*, 6 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS, § 18:25 & n.4 (4th ed. 2002) ("common liability issues such as conspiracy or monopolization have, almost invariably, been held to predominate over individual issues") (citations omitted).[20]

---

[20] The need to determine damages individually in an antitrust case never poses an obstacle to class certification. *E.g.*, *In re Bulk Extruded Graphite Prods. Antitrust Litig.*, 2006 WL 891362, *15 (D.N.J. April 4, 2006); *In re Community Bank of N. Va.*, 418 F.3d at 305-06.

Such a finding is particularly appropriate in the settlement context. For instance, in *In re Warfarin*, which involved the settlement of a class action prosecuted under § 2 of the Sherman Act, the Third Circuit found that allegations of an anticompetitive scheme to impair competition — precisely the kind of conduct alleged against BD here — focused on the defendants' conduct, conduct which was alleged to have had an effect on all purchasers (higher prices). Thus, the Third Circuit affirmed the district court's determination that the predominance standard in an antitrust case was met and that a class should therefore be certified in light of settlement:

> [P]laintiffs have alleged that DuPont engaged in a broad-based campaign, in violation of federal and state consumer fraud and antitrust laws, to deceive consumers, TPPs, health care professionals, and regulatory bodies into believing that generic warfarin sodium was not an equivalent alternative to Coumadin. These allegations naturally raise several questions of law and fact common to the entire class and which predominate over any issues related to individual class members, including the unlawfulness of DuPont's conduct under federal antitrust laws as well as state law, the causal linkage between DuPont's conduct and the injury suffered by the class members, and the nature of the relief to which class members are entitled.
>
> Moreover, proof of liability for DuPont's conduct under § 2 of the Sherman Act and the Delaware Consumer Fraud statute depends on evidence which is common to the class members, such as evidence that DuPont made misrepresentations about Coumadin and generic warfarin sodium permitting DuPont to monopolize the market for warfarin sodium and charge supracompetitive prices for Coumadin, while discouraging class members to purchase the lower-priced generic competitor. In other words, while liability depends on the conduct of DuPont, and whether it conducted a nationwide campaign of misrepresentation and deception, it does not depend on the conduct

29

of individual class members. * * * Finally, the fact that plaintiffs
allege purely an economic injury as a result of DuPont's conduct (*i.e.*,
overpayment for warfarin sodium), and not any physical injury,
further supports a finding of commonality and predominance because
there are little or no individual proof problems in this case otherwise
commonly associated with physical injury claims.

*In re Warfarin*, 391 F.3d at 528-29 (affirming *In re Warfarin*, 212 F.R.D. at 248).

Similarly here, the focus in this case is the conduct of BD, allegations which raise
legal and factual questions common to all Class members, including the
unlawfulness of BD's conduct under federal antitrust laws, the causal linkage
between BD's conduct and the injury suffered by the Class members (overcharges
on BD Hypodermic Products), and the nature of the relief to which Class members
are entitled.  Under the standards set forth by the Third Circuit in *In re Warfarin*,
predominance is clearly met in this case.

In several recent antitrust and other actions — including actions which post-
date and cite the Third Circuit's recent decision in *In re Hydrogen Peroxide
Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008) — courts in this district certified
classes in light of settlement, and found that the predominance standard was met,
because the focus of the case was the defendant's liability.  *See In re LG/Zenith
Rear Projection Television Class Action Litig.*, 2009 WL 455513, *5 (D.N.J. Feb.
18, 2009) (Linares, J.) ("plaintiffs all allege the same conduct by Defendants and
would seek to utilize the same evidence in each individual action as in the class
action.* * * Nothing in the record exists to indicate that individual issues would

30

predominate at trial. Predominance, therefore, exists in this matter") (certifying class in light of settlement); *In re Insurance Brokerage Antitrust Litigation*, 2009 WL 411877, *12 (D.N.J. Feb. 17, 2009) (certifying settlement class "because the clear focus of an antitrust class action is on the allegedly deceptive conduct of the defendant and not on the conduct of individual class members, common issues necessarily predominate"), *aff'd*, 79 F.3d 241, 269 (3d Cir. 2009) ("plaintiffs' theory for proving antitrust injury would apply to all of the class members"); In *re Pet Food Products Liability Litigation*, 2008 WL 4937632, *6 (D.N.J. Nov. 18, 2008) ("[f]or the purpose of certification of the Class for settlement, the same set of core operative facts and theory of proximate cause apply to each member of the class. The actions in this litigation concern consumers who purchased, used or obtained, or whose pets used or consumed, Recalled Pet Food Products. If plaintiffs and potential class members were to bring individual actions, they would each be required to prove the same wrongdoing by defendants in order to establish liability. Thus, common questions of law and fact predominate").[21]

---

[21] In *Hydrogen Peroxide*, the Third Circuit was concerned with ensuring that "the element of antitrust impact is capable of proof *at trial* through evidence that is common to the class rather than individual to its members."   552 F.3d at 311-12 (emphasis added).   Concerns about the manageability of a classwide trial thus animate the holding and reasoning of *Hydrogen Peroxide*. *E.g., id.* at 311 n.8, 312, 319 n.20.   Those concerns are inapplicable here, where the proposal is that there be no trial.   *See In re Insurance Brokerage Antitrust Litig.*, 579 F.3d 241, 269 (3d Cir. 2009) (citing *Hydrogen Peroxide*).

### 2. *Superiority*

Certifying this case as a class action is superior to any other method that may exist for resolving this case or controversy, as required by Rule 23(b)(3). *E.g. In re Warfarin*, 212 F.R.D. at 251 (superiority requirement met because class members with smaller claims lack incentive to pursue individual litigation, class members with larger can opt out if they wish, class treatment in a single forum is preferable to countless individual lawsuits, cases filed to date suggest class members lack incentive to prosecute individual lawsuits, and MDL panel decided to consolidate case in a single forum).[22] Class treatment of antitrust suits is considered inherently appropriate. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 1994 WL 663590, at *6 (N.D. Ill. Nov. 18, 1994); *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1045 (N.D. Miss. 1993).

Indeed, the class action device is far superior to, and more manageable than, any other procedure available for the treatment of the factual and legal issues raised by Plaintiffs' claims. "Joinder of all of the class members would be impracticable, and duplicative individual trials would impose similar burdens on

---

[22] Here, the Judicial Panel on Multidistrict Litigation transferred and consolidated all pending matters to this Court for coordinated pretrial proceedings, illustrating the appropriateness of concentrating the litigation in this forum. *In re Hypodermic Prod. Antitrust Litig.*, 408 F. Supp.2d 1356 (J.P.M.L. 2005) ("[w]e conclude that the District of New Jersey is an appropriate forum in this docket for the following reasons: i) the district, wherein sole common defendant Becton is headquartered, is an accessible location that will be geographically convenient for many of this docket's litigants, witnesses and counsel; and ii) the district is well equipped with the resources that this complex antitrust docket is likely to require").

the litigants and the courts." *Cumberland Farms v. Browning-Ferris Indus.*, 120 F.R.D. 642, 647-48 (E.D. Pa. 1988).  *See also In re Chlorine & Caustic Soda*, 116 F.R.D. 622, 627 (E.D. Pa. 1987) (same); *McLendon v. Continental Group, Inc.*, 1986 WL 11789, *4 (D.N.J. Oct. 21, 1986) (same).   If Class members were required to proceed with separate actions, this litigation would be wholly unwieldy and entirely unmanageable.  *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D. Ill. 1992) ("[w]hat would be unmanageable is the institution of numerous individual lawsuits").  And, absent the class procedure, most Class members would be effectively foreclosed from pursuing their claims.  *See In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 252 (S.D. Tex. 1978); *In re Glassine & Greaseproof Paper Antitrust Litig.*, 88 F.R.D. 302, 307 (E.D. Pa. 1980).[23]  The superiority requirement of Rule 23(b)(3) is clearly met here.

## D.   <u>Conclusion</u>

For all of the foregoing reasons, Plaintiffs respectfully request that the Direct Purchaser Class be certified for purposes of settlement under Fed. R. Civ. P. 23(b)(3), that Louisiana Wholesale Drug Company, Inc., Rochester Drug Co-Operative, Inc., JM Smith Corporation, Dik Drug Company, SAJ Distributors, Inc., American Sales Co., Inc., and Park Surgical Co., Inc. be certified as representatives

---

[23] The presence of class members with large claims does not militate against a finding that a class action is superior to individual actions.  *E.g., In re Bulk Extruded Graphite Prods. Antitrust Litig.*, 2006 WL 891362, *16 (D.N.J. April 4, 2006) ("[a]lthough defendants' claim that 83 percent of the purchases were made by one customer, there has been no indication that this party (whoever it may be), would favor prosecuting this action independently").

of the Direct Purchaser Class, and that proposed Class Counsel be appointed pursuant to Rule 23(g).

## IV.   APPROVAL OF THE PROPOSED FORM AND MANNER OF NOTICE AND THE PROPOSED FINAL SETTLEMENT SCHEDULE LEADING UP TO THE FAIRNESS HEARING IS APPROPRIATE

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Notice must fairly inform class members of the settlement and their options. *Gottlieb v. Wiles,* 11 F.3d 1004, 1012-13 (10th Cir. 1993) (overruled in part on other grounds).

The proposed notice program clearly meets this standard, providing clear and detailed instructions to Class members. The proposed Notice will be sent via first class mail to each Class member, at its last known address as identified in BD's sales records, and will be published, in summary form, in *Health Care Distributor*, a medical device industry magazine that is widely read by direct purchasers of medical devices. Given that BD has produced its sales records in this case, including its detailed customer list, the direct mail method alone should be sufficient to reach all Class members.[24] The Class is composed of sophisticated

---

[24] "It is beyond dispute that notice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances.'" *Peters* v. *Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (collecting cases). *See also Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 377-378 (E.D. Pa. 2000) (holding that when addresses are available, mailed notice satisfies Rule 23 and due process requirements).

business entities of the type that Class counsel has previously had success in notifying through direct mailing.

Further, it is respectfully suggested that the content of the Notice satisfies the requirements of Rule 23(e). The proposed Notice (Pearlman Approv. Decl. Ex. B) provides a description of the Class, the procedural status of the litigation, a brief description of the plan of allocation that Plaintiffs intend to propose, and advises Class members of their rights under Rule 23, including the right to opt out of the Class, object to the Settlement, and be heard as to the reasonableness and fairness of the Settlement. The Notice also sets forth the significant terms of the Settlement and the total amount of money BD has agreed to pay to the Class. Finally, the Notice outlines the court approval process for the proposed Settlement, counsel's request for attorneys' fees and reimbursement of expenses,[25] and proposed incentive awards for each of the Class Representatives.[26]

Under the circumstances, the Notice fairly describes the proposed Settlement and its legal significance, thereby satisfying the notice requirements of Rule 23(e).

---

[25] Direct Purchaser Class Counsel will, pursuant to the proposed schedule outlined below, submit an application for attorneys' fees and expenses to be reimbursed out of the settlement proceeds. This application will be filed prior to the deadline for any Class members to object to the proposed Settlement.

[26] "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (quotations omitted). "It is particularly appropriate to compensate named representative plaintiffs with incentive awards when they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of the class." *Bradburn Parent Teacher Store, Inc.* v. *3M*, 513 F. Supp. 2d 322, 342 (E.D. Pa. 2007).

*See, e.g, Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1990) ("[The notice] must also contain an adequate description of the proceedings written in objective, neutral terms, that, in so far as possible, may be understood by the average absentee class member") (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977)); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 353 (S.D. Fla. 1982) ("It is not the function of the settlement notice to fully inform the class of all the details of the settlement, but merely to put class members on notice of the general parameters of the settlement and to inform them of where information as to specifics may be obtained").

As set out in the proposed Order, Plaintiffs propose the following schedule for completing the approval process:

a.    Within 20 days of entry of the preliminary approval order: Dissemination of notice to the Class;

b.    50 days from entry of preliminary approval order: Deadline for opting out of the Class or objecting to the Settlement;

c.    One week prior to opt-out deadline: Submission of Plaintiffs Counsel's motion for final approval of the Settlement, application for attorneys' fees and expenses and application for an incentive award for Plaintiffs;[27] and

---

[27] This date is subject to extension in the event that, in the judgment of counsel for either Plaintiff or Defendants, additional time is required to complete the calculations and/or dispute resolution process provided for in connection with Paragraph 18 of the Settlement Agreement.

    d.    Two weeks after opt-out deadline, or such later date as results from the use of the dispute resolution process in connection with Paragraph 18 of the Settlement Agreement: The Fairness Hearing.

## V. <u>**CONCLUSION**</u>

For the foregoing reasons, the Court should preliminarily approve the proposed Settlement (attached as Pearlman Approv. Decl. Ex. A), approve the proposed form and manner of Notice (Pearlman Approv. Decl. Ex. B), and approve the proposed Final Settlement Schedule and Hearing (or any other schedule satisfactory to the Court). A proposed Order is attached hereto (Pearlman Approv. Decl. Ex. C).

Respectfully submitted,

Dated:  <u>December 22, 2009</u>

<u>   /s/ Peter Pearlman        </u>
Peter S. Pearlman
COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
Park 80 Plaza West- One
Saddle Brook, NJ 07663
(201) 845-9600
psp@njlawfirm.com

Bruce E. Gerstein
Noah Silverman
Joseph Opper
Elena K. Chan
GARWIN GERSTEIN & FISHER, LLP
1501 Broadway, Suite 1416
New York, NY  10036
(212) 398-0055

John Gregory Odom
Stuart Des Roches
Andrew Kelly
ODOM & DES ROCHES, L.L.P.
Suite 2020, Poydras Center
650 Poydras St.
New Orleans, LA 70130
(504) 522-0077

Kendall S. Zylstra
Stephen Connolly
SCHIFFRIN & BARROWAY, LLP
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706

Linda P. Nussbaum
COHEN, MILSTEIN, HAUSFELD &
TOLL, P.L.L.C.
150 East 52nd Street - 30th Floor
New York, NY 10019
(212) 836-7797

Alfred G. Yates
Gerald Rutledge
LAW OFFICES OF ALFRED G. YATES,
JR., PC
429 Forbes Avenue
Pittsburgh, PA 15219
(412) 391-5164

Daniel Berger
Eric Cramer
Peter Kohn
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

David P. Smith
PERCY SMITH & FOOTE, L.L.P.
720 Murray Street
P.O. Box 1632
Alexandria, LA 71309
(318) 445-4480

Adam Moskowitz
Tucker Ronzetti
KOZYAK TROPIN & THROCKMORTON, P.A.
280 Wachovia Financial Center
200 South Biscayne Blvd.
Miami, FL  33131
(305) 372-1800

Joshua P. Davis
LAW OFFICES OF JOSHUA P. DAVIS
437 Valley Street
San Francisco, CA 94131
(415) 422-6223

Mitchell W. Berger, Esq.
BERGER SINGERMAN, P.A.
350 Las Olas, Suite 1000
Fort Lauderdale, FL 33301
Tel: (954) 525-9900
Fax: (954) 523-2872

Steve D. Shadowen
HANGLEY ARONCHICK SEGAL & PUDLIN
30 North Third Street, Suite 700
Harrisburgh, PA 17101-1701
Tel: (717) 364-1030
Fax: (717) 364-1020

Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO, LLP
One Main Street, 4th Fl.
Cambridge, MA 02142
Tel: (617) 482-3700

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO, LLP
60 West Randolph Street, Suite 200
Chicago, IL 60601
Tel: (312) 762-9237

David Boies, III
STRAUS & BOIES, LLP
4041 University Avenue
Fairfax, VA 22030
Tel: (703) 764-8700
Fax: (703) 764-8704

Howard J. Sedran
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663

David Patron
PHELPS DUNBAR, LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
Tel: (504) 566-1311

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Tel: (206) 623-7292

Jeffrey Kodroff
John A. Macoretta
SPECTOR, ROSEMAN & KODROFF
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 496-0300

Kenneth G. Walsh
STRAUS & BOIES, LLP
2 Depot Plaza
Bedford Hills, NY 10507
Tel: (914) 244-3200
Fax: (914) 244-3260

Dianne M. Nast
Erin C. Burns
Steven L. O'Donnell
RODANAST, P.C.
801 Estelle Drive
Lancaster, PA 17601
Tel: (717) 892-3000
Fax: (717) 892-1200

Michael L. Roberts
ROBERTS LAW FIRM, P.A.
P.O. Box 241790
20 Rahling Circle
Little Rock, AR 72223-1790
Tel: (501) 821-5575
Fax: (501)821-4474

Daniel E. Gustafson
GUSTAFSON GLUECK, PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622