COHN LIFLAND PEARLMAN
   HERRMANN & KNOPF LLP
Peter S. Pearlman
Park 80 Plaza West-One
Saddle Brook, NJ 07663
Telephone: (201) 845-9600
Fax: (201) 845-9423

<u>**CONFIDENTIAL: FILE UNDER SEAL**</u>

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

### *<u>"DOCUMENT TO BE FILED ELECTRONICALLY"</u>*

| | |
|---|---|
| In re HYPODERMIC PRODUCTS DIRECT PURCHASER ANTITRUST LITIGATION | Master Docket No. 06–1602 (JLL/CCC) <br><br> MDL No. 1730 |
| THIS DOCUMENT RELATES TO: The Consolidated Direct Purchaser Class Actions: Louisiana Wholesale Drug Company, Inc. (05–1602), Rochester Drug Co–Operative, Inc. (05–1602), JM Smith Corporation (05–1602), Dik Drug Company (05–4465), SAJ Distributors, Inc. (05–5891), America Sales Co. Inc. (06–1204), and Park Surgical Co., Inc. (06–1205) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF THE DIRECT PURCHASER PLAINTIFFS
THAT THE COURT MAKE PARTICULAR FINDINGS
RELATING TO DIRECT PURCHASER STANDING,
<u>OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

I.    AS A MATTER OF LAW, *DENTSPLY* FORECLOSES THE
      HEALTHCARE PURCHASER PLAINTIFFS' PROPOSED
      "AGENCY" EXCEPTION ........................................................................ 2

II.   THE HEALTHCARE PURCHASER PLAINTIFFS
      MISINTERPRET THE *MERCEDES* DECISION ..................................... 7

III.  THE HEALTHCARE PURCHASER PLAINTIFFS'
      OTHER ASSERTIONS LACK MERIT ...................................................... 9

CONCLUSION ................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                                                    Page(s)

*Campos v. Ticketmaster Corp.,*
   140 F.3d 1166 (8th Cir. 1998) ............................................................... 6, 12

*Delaware Valley Surg. Supply, Inc. v. Johnson & Johnson,*
   523 F.3d 1116 (9th Cir. 2008) ..................................................................1

*Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp.,*
   1990 WL 156107 (D.N.J. Oct. 15, 1990) .................................................3

*Hanover Shoe, Inc. v. United Machinery Corp.,*
   392 U.S. 481 (1968) ............................................................................ 5, 6, 8

*Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.,*
   424 F.3d 363 (3d Cir. 2005) ........................................................... *passim*

*Illinois Brick Co. v. Illinois,*
   431 U.S. 720 (1977) ....................................................................... *passim*

*Kansas v. UtiliCorp United, Inc.,*
   497 U.S. 199 (1990) ......................................................................... 1, 3, 6

*Loeb Indus., Inc. v. Sumitomo Corp.,*
   306 F.3d 469 (7th Cir. 2002) ...................................................................8

*McCarthy v. Recordex Service, Inc.,*
   80 F.3d 842 (3d Cir. 1996)) ...................................................................12

*In re Mercedes-Benz Antitrust Litig.,*
   364 F. Supp.2d 468 (D.N.J. 2005) ...................................................... 7, 8, 9

*Merican, Inc. v. Caterpillar Tractor Co.,*
   713 F.2d 958 (3d Cir. 1983) ....................................................................1

*O'Neill v. Potter,*
   2009 U.S. Dist. LEXIS 98404 (D.N.J. Oct. 22, 2009) ...........................9

*Sanner v. Board of Trade,*
   62 F.3d 918 (7th Cir. 1995) .....................................................................8

*St. Francis Med. Center v. C.R. Bard, Inc.,*
   2009 U.S. Dist. LEXIS 89166 (E.D. Mo. Sept. 28, 2009) ....................2

*In re Wyoming Tight Sands Antitrust Cases,*
   695 F. Supp. 1109 (D. Kan. 1988) ..........................................................1

*Table of Authorities - Continued*

Page(s)

**Statutes, Rules & Regulations**

Clayton Act,
    § 4 .............................................................................................................5

Fed. R. Civ. P.,
    Rule 30(b)(6) ............................................................................................9
    Rule 52.....................................................................................................12
    Rule 56.....................................................................................................12
    Rule 56(f)...................................................................................................2

## PRELIMINARY STATEMENT

The Direct Purchaser Plaintiffs hereby submit the following reply brief in further support of their Motion That the Court Make Particular Findings Relating to Direct Purchaser Standing, Or, Alternatively, for Partial Summary Judgment.

The Healthcare Purchaser Plaintiffs argue that they want a jury trial on their proposed exception to *Illinois Brick*. But their arguments pose questions of law, not of fact, and the Healthcare Purchaser Plaintiffs fail to cite any decision where a dispute over the identity of the direct purchaser under *Illinois Brick* was decided by a jury. *Juries do not decide direct purchaser disputes.* The Supreme Court has specifically warned against such protracted litigation of direct purchaser standing:

> The difficulties posed by issues of this sort led us to adopt the direct purchaser rule, and we must decline to create an exception that would require their litigation. As we have stated before: the task of disentangling overlapping damages claims is not lightly to be imposed upon potential antitrust litigants, or upon the judicial system.

*Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 211 (1990) (citation and quotation omitted). Instead, disputes over direct purchaser standing under *Illinois Brick* are typically resolved on the pleadings.[1]

---

[1] *E.g., UtiliCorp*, 497 U.S. at 205 (affirming *In re Wyoming Tight Sands Antitrust Cases*, 695 F. Supp. 1109, 1118 (D. Kan. 1988) (*sua sponte* dismissing end users' lawsuit)); *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 424 F.3d 363 (3d Cir. 2005) (motion to dismiss); *Merican, Inc. v. Caterpillar Tractor Co.*, 713 F.2d 958, 965-69 (3d Cir. 1983) (reversing district court's refusal to grant motion to dismiss claims of indirect purchasers). At the latest, they are decided on summary judgment. *E.g., Delaware Valley Surg. Supply, Inc. v. Johnson & Johnson*, 523 F.3d 1116 (9th Cir. 2008) (granting summary judgment in favor of distributor, and against hospital that bought defendant's medical products through that distributor pursuant to contract between hospital's GPO and defendant);

*(footnote continued...)*

This particular dispute, by contrast, has occupied over two years of discovery pursuant to Fed. R. Civ. P. 56(f).  The time has come for it to end.

## I.    AS A MATTER OF LAW, *DENTSPLY* FORECLOSES THE HEALTHCARE PURCHASER PLAINTIFFS' PROPOSED "AGENCY" EXCEPTION

The Healthcare Purchaser Plaintiffs' opposition brief ("HPP Opp. Br.") makes perfectly clear that there is *one, lone reason* why the Healthcare Purchaser Plaintiffs — who have asserted in pleadings and admitted in testimony that they bought BD Hypodermic Products exclusively *through distributors*, rather than from BD directly — believe they should nevertheless enjoy Clayton Act damages standing in lieu of the distributors through whom they purchased those products.

That lone reason is a preprinted BD "Dealer Notification" form that labels distributors as BD's "agents."  Over and over again, in their opposition brief and their response to the Direct Purchaser Plaintiffs' Statement of Undisputed Facts, the Healthcare Purchaser Plaintiffs invoke the "agency" label of the Dealer Notification, and hope the Court will infer from it that distributors do not "really buy" from BD the Hypodermic Products that the Healthcare Purchaser Plaintiffs later purchase through those distributors.  If there is an argument the Healthcare Purchaser Plaintiffs have made that does not depend on the "agency" label, we cannot locate it.

---

*(...footnote continued)*
*St. Francis Med. Center v. C.R. Bard, Inc.*, 2009 U.S. Dist. LEXIS 89166, *90-*95 (E.D. Mo. Sept. 28, 2009) (same).

2

The Healthcare Purchaser Plaintiffs understand, correctly, that if distributors do "really buy" from BD for the Hypodermic Products that the Healthcare Purchaser Plaintiffs ultimately buy through those distributors, then the Healthcare Purchaser Plaintiffs are *indirect* purchasers of those products.

And given the uncontradicted evidence that distributors really do buy all such products before reselling them to hospitals,[2] the Healthcare Purchaser Plaintiffs need a legal theory to explain why those purchases should not be treated as direct purchases under *Illinois Brick*.[3] The legal theory to which the Healthcare Purchaser Plaintiffs have turned is "agency."

Thus, almost 2½ years after the Healthcare Purchaser Plaintiffs disclaimed meeting, or even trying to meet, any exception to *Illinois Brick*,[4] they now argue that distributors' purchases from BD can effectively be ignored, and the distributors' overcharge claims as to those units extinguished, because the Dealer

---

[2] *See* Direct Purchaser Plaintiffs' Statement of Undisputed Facts, ¶¶ 1, 6, 8-10, 12-14. Moreover, the argument that the middleman does not "really buy" has been rejected by this Court and the Third Circuit as contravening the Supreme Court's decision in *UtiliCorp. See Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp.*, 1990 WL 156107, *2 (D.N.J. Oct. 15, 1990) (this Court rejects argument that "plaintiff is not a purchaser at all" because plaintiff did not pay the full purchase price or take delivery of the product), *aff'd*, 995 F.2d 425, 439 (3d Cir. 1993) ("the present state of the direct purchaser doctrine requires that [plaintiff], and not . . . any later purchaser of the aircraft, is the proper party to seek a recovery for antitrust injury . . . for the same reasons that the Supreme Court held an exception would be inappropriate in *UtiliCorp*") (citing *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 207 (1990)).

[3] *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

[4] Hearing Tr. of Oct. 3, 2007, at 29:7-11 (Mr. Macon states in open court that MedStar is not "seeking an exception" to *Illinois Brick*); *id.* at 32:12-15 (same).

3

Notification calls distributors BD's "agents." Agents, we are told, do not "really buy" for purposes of *Illinois Brick.*

But as the Direct Purchaser Plaintiffs and BD both showed in opposing MedStar's motion for partial summary judgment, the "agency" theory was presented to, and rejected by, both the district court and the Third Circuit in *Dentsply. See* DPP Opp. Br. at 6-8 [5]; BD Opp. Br. at 29-33.[6] The Third Circuit was clear: the labs in that case (akin to the Healthcare Purchaser Plaintiffs here) would only qualify for an exception to *Illinois Brick* if Dentsply's dealers were *owned by* Dentsply. 424 F.3d at 371-72. Short of that, the dealers could not be barred from themselves suing Dentsply to recover overcharges, and consequently "*Illinois Brick's* policy reasons for denying standing [to the labs] apply." *Id.* at 372. That is how the "control" exception to *Illinois Brick* works.[7]

The Third Circuit explained very clearly in *Dentsply* why the "control" exception could not embrace any supplier-distributor relationship short of ownership without violating *Illinois Brick*, and why, consequently, the dental labs could not sue for damages under the Clayton Act. Following the Supreme Court's reasoning in *Illinois Brick*, the Third Circuit set out three reasons:

---

[5] Direct Purchaser Plaintiffs' Brief in Response to MedStar's Motion for Partial Summary Judgment ("DPP Opp. Br.").

[6] Defendant BD's Memorandum of Law in Opposition to Plaintiff MedStar's Motion For Partial Summary Judgment on Standing ("BD Opp. Br.").

[7] The other exception to *Illinois Brick*, the so-called "fixed quantity/cost-plus" exception, is not at issue here.

*First*, expanding the "control" exception would create the risk that the defendant would be sued by multiple parties in the same distribution chain seeking compensation for the same injury. The Third Circuit determined that, short of Dentsply's owning its dealers, "[n]othing . . . would prevent the dealers from suing Dentsply, thus creating a risk of duplicative liability for Dentsply and potentially inconsistent judgments." *Dentsply*, 424 F.3d at 372.[8] Such a result violates *Illinois Brick. Illinois Brick*, 431 U.S. at 730-31.

*Second*, if permitted to sue, the labs would still have had to demonstrate the portion of the overcharge dealers passed onto them, "leaving intact the evidentiary complexities and uncertainties of concern in *Illinois Brick*." *Dentsply*, 424 F.3d at 372. Those complexities and uncertainties "place too great a burden on the courts." *Id.* at 370. Like duplicative liability, the need for overcharge apportionment violates *Illinois Brick. Illinois Brick*, 431 U.S. at 737-47.[9]

---

[8] Unless they are owned by the antitrust defendant, middlemen that have paid BD for Hypodermic Products — like the distributors in this case — have an inviolate statutory right under Section 4 of the Clayton Act to sue for the full amount of the overcharge they paid. *See Hanover Shoe, Inc. v. United Machinery Corp.*, 392 U.S. 481, 488 n.6 (1968) ("Hanover's injury was complete when it paid the [overcharge]"); *id.* at 489 ("when a buyer shows that the price paid by him for materials purchased for use in his business is illegally high and also shows the amount of the overcharge, he has made out a prima facie case of injury and damage within the meaning of § 4"); *Illinois Brick*, 431 U.S. at 724-25 (in *Hanover Shoe*, "[t]he Court held that except in certain limited circumstances, a direct purchaser suing for treble damages under § 4 of the Clayton Act is injured within the meaning of § 4 by the full amount of the overcharge paid by it"). If the Healthcare Purchaser Plaintiffs were overcharged, then the distributors through whom the Healthcare Purchaser Plaintiffs purchased BD Hypodermic Products were necessarily overcharged as well. *See* BD Opp. Br. at 39; HPP Opp. Br. at 6-7 (conceding that distributors were overcharged).

[9] Here, the need for overcharge apportionment was illustrated by the Healthcare Purchaser Plaintiffs' economic expert, Fiona Scott Morton, who could not rule out

*(footnote continued...)*

*Third*, if the labs were permitted to sue, "the ultimate recovery for the dealers would be diluted (assuming that, rather than the dealers being permitted to recover the entire overcharge, it was apportioned among the dealers and the labs), thereby decreasing the dealers' incentive to sue." *Dentsply*, 424 F.3d at 372. The Supreme Court has determined that such dilution of recoveries would "seriously impair" the private treble-damages action, an "important weapon of antitrust enforcement." *See Illinois Brick*, 431 U.S. at 745. Thus, like duplicative liability and overcharge apportionment, diluting a middleman's potential recovery violates *Illinois Brick. Illinois Brick*, 431 U.S. at 724-25, 745.[10]

Thus, even if distributors were, in fact, agents of BD, under *Dentsply* that could not reduce or extinguish their right, protected under *Hanover Shoe* and *Illinois Brick*, to collect the full amount of the overcharge they paid to BD for

---

*(...footnote continued)*
that distributors absorb at least some portion of BD's overcharge. *See* Pearlman Standing Decl. Ex. 8, at 57:3-59:3. That is hardly a surprise, because absent satisfaction of the "fixed quantity/cost-plus" exception (which is concededly not met here), as a matter of law distributors have *necessarily* absorbed some portion of BD's overcharge: if BD's prices are artificially inflated, distributors may find it more difficult to obtain their standard markup (or to raise their markup), or may lose volume, which, by definition, means that the middleman has absorbed some portion of the defendant's overcharge. *See UtiliCorp*, 497 U.S. at 209 (citing *Hanover Shoe*); *Campos v. Ticketmaster Corp.*, 140 F.3d 1166, 1170-72 (8th Cir. 1998).

[10] Here, the Healthcare Purchaser Plaintiffs propose the very dilution that violates *Illinois Brick*. They propose that distributors enjoy Clayton Act damages standing for the 26% of purchases that are *not* subject to a GPO contract (purchases for which the Healthcare Purchaser Plaintiffs do not even seek to recover), while the Healthcare Purchaser Plaintiffs enjoy Clayton Act damages standing for the remaining 74% of purchases that *are* subject to a GPO contract. HPP Opp. Br. at 6-7.

Hypodermic Products.  Nor could it give the Healthcare Purchaser Plaintiffs the right under the Clayton Act to collect the overcharges they paid (to distributors) for the units of BD Hypodermic Products they concede they bought through those distributors.  Only if BD owned its distributors could such a result obtain, *because only then would the distributors themselves be foreclosed from suing BD*.  The Healthcare Purchaser Plaintiffs' proposed exception to *Illinois Brick* thus fails as a matter of controlling Third Circuit law.

## II.   THE HEALTHCARE PURCHASER PLAINTIFFS MISINTERPRET THE *MERCEDES* DECISION

The other argument the Healthcare Purchaser Plaintiffs make is that application of the *Mercedes* case makes them direct purchasers.[11]  But *Mercedes* did not hold — as the Healthcare Purchaser Plaintiffs' interpretation requires — that any middleman was divested of standing in favor of an end user because some "economic substance" test was applied and yielded the conclusion that the middleman's purchase should not be considered an independent purchase in the chain of distribution.

Rather, *Mercedes* held that because one party paid for the product (a car) and the other paid for the use of the product (lease payments on the car), they both directly purchased *different items* from the defendant and thus paid *different overcharges*.  The leasing company paid overcharges on the purchase price of the car.  The lessee paid overcharges on the lease payments.  *Id.* at 478.  Because these

---

[11] *In re Mercedes-Benz Antitrust Litig.*, 364 F. Supp.2d 468 (D.N.J. 2005).

were two different products and two different overcharges, the case did not implicate any of the concerns of *Illinois Brick*. *Id.* at 476-77. When two different overcharges are involved, liability is not be impermissibly duplicative, and concerns about complexity of determining how much of an overcharge a middleman absorbed and passed-on to the end user are absent. *Id.* at 482. The leasing companies could therefore recover 100% of the overcharge on the purchase price they paid for the Mercedes-Benz vehicles, and the lessees could recover 100% of the overcharge they had paid on the lease payments. *Id.* at 480, 481-82.[12] Because two different overcharges were involved, the overcharge suffered by the lessees was not "derivative of" the overcharge suffered by the leasing companies. *Id.* at 480 (citing *Sanner v. Board of Trade*, 62 F.3d 918, 928-30 (7th Cir. 1995)).

Here, unlike in *Mercedes*, the Direct Purchaser Plaintiffs and the Healthcare Purchaser Plaintiffs seek to recover the *very same overcharge damages* on the *very same purchases*. *Compare* Direct Purchaser Plaintiffs' Second Consol. Amend. Compl. ¶ 109 (Doc. #77) *with* Jabo Consol. Compl. ¶ 75-77 (Doc. #78) *and with* MedStar Amend. Compl. ¶¶ 76-78 (Doc. #90) *and with* Hebrew Home Compl. ¶ 74-76 (Doc. # 3-2 at No. 07-2128).

Thus, contrary to the Healthcare Purchaser Plaintiffs' arguments, *Mercedes* lends no support whatsoever to the idea that a distributor's rights under *Hanover Shoe* and *Illinois Brick* to recover 100% of the overcharge it paid to BD for

---

[12] In coming to this conclusion, the *Mercedes* court relied upon other decisions where plaintiffs complained of separate and distinct overcharges and thus both enjoyed standing to seek the entirety of the overcharge each suffered. *Id.* at 479-80 (citing *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469 (7th Cir. 2002)).

Hypodermic Products can be reduced or extinguished in favor of a Healthcare Purchaser Plaintiff because of the "economic substance" of the Healthcare Purchaser Plaintiff's purchases through that distributor. In fact, *Mercedes*, like *Dentsply*, stands precisely for the converse of that argument: a distributor's right to seek 100% of the overcharge cannot be reduced or extinguished for any reason whatsoever, and consequently an end user that purchases through that distributor cannot, consistently with *Illinois Brick*, enjoy Clayton Act standing to seek, as the Healthcare Purchaser Plaintiffs seek here, those same overcharges.

## III.   THE HEALTHCARE PURCHASER PLAINTIFFS' OTHER ASSERTIONS LACK MERIT

The only other assertions the Healthcare Purchaser Plaintiffs make only serve to highlight the infirmity of their position. Some appear designed merely to confuse.

First, they complain that the Direct Purchaser Plaintiffs asked leading questions of BD during a deposition. Yet, because the Direct Purchaser Plaintiffs "could later present that evidence through direct testimony, *i.e.*, in a form that would be admissible at trial," there is no question that the Court can consider that deposition testimony, even assuming *arguendo* an objection (to cross examining one's party-opponent) is valid. *O'Neill v. Potter*, 2009 U.S. Dist. LEXIS 98404, *4 (D.N.J. Oct. 22, 2009).

Second, they list instances where BD's counsel took positions that MedStar claims are inconsistent with the testimony BD ultimately gave through its Rule 30(b)(6) designee. However, attorney argument is not evidence, nor can it alter the

9

unambiguous law of direct purchaser standing, which is for the Court, not BD's counsel, to decide.

Third, they pretend that the Direct Purchaser Plaintiffs fail to address BD Hypodermic Products that were subject to a GPO contract. But that is obviously the very focus of these motions. *E.g.*, DPP SOF ¶ 1 ("including the BD Hypodermic Products they ultimately resold to a customer (like the Healthcare Purchaser Plaintiffs) that happened to be a member of a GPO that had a contract with BD").[13]

Fourth, they repeatedly assert, without any support, that distributors, rather than paying BD for Hypodermic Products, instead merely "collect money" from end users and remit it back to BD. They can cite nothing to support that proposition because the uncontroverted evidence is that distributors must pay BD regardless of whether (or when) they resell BD Hypodermic Products, and keep the

---

[13] For such "contract sales," even under the Healthcare Purchaser Plaintiffs' own theory, title to BD Hypodermic Products "reverts to Becton" from the distributor (HPP Opening Br. at 10), an obvious concession that the distributor received title from BD, and thus bought that product, in the first place. *See also* Pearlman Standing Decl. Ex. 11 (MedStar's accounting expert), at 100:15-101:9 (distributor receives title from BD); *id.* Ex. 8 (MedStar's economic expert), at 85:7-9 (same); Supp. Macon Decl. Ex. 36, at BDLWD 00076505 ████████ ███████████████████████████████████████████████████████████ (emphasis added); Supplemental Declaration of Peter S. Pearlman, Esq. in Support of Direct Purchaser Plaintiffs' Standing Motion, Ex. 12, at BDLWD0076519 (2005 BD Finance Policy Guide) ████████████████████████████████████████ ████████████████ (emphasis added).

proceeds of those resales for themselves, rather than remitting them to BD. *See* DPP Opp. Br. at 14 n.23; BD Opp. to MedStar SOF at 5 n.20; *id.* at 12 n.18.

Fifth, and with a similar absence of support, they assert that distributors do not pay the prices contained in the relevant GPO contracts. Distributors are not parties to the relevant contracts between GPOs and BD, they purport to explain. Again, they can cite nothing to support their assertion, because the uncontroverted evidence — including the plain language of the contracts themselves — is that the prices set by those contracts are, in fact, the prices that *distributors* (who, it bears mentioning, are intended third-party beneficiaries to the contracts[14]) pay to BD, not end users like the Healthcare Purchaser Plaintiffs. *See* DPP SOF ¶¶ 12, 5, 11. Indeed, the Healthcare Purchaser Plaintiffs have themselves specifically admitted that, by operation of a rebate from BD to distributors, distributors do, in fact, pay BD the GPO contract prices. HPP Opp. Br. at 11. *See also* HPP Opp. to DPP SOF, at 3 (admitting that distributors remit contract prices to BD).

Sixth, they assert, nakedly, that distributors cannot charge GPO members any price other than the GPO contract price. HPP Opp. Br. at 14. They can cite nothing in support of that proposition, either, because the uncontradicted evidence adduced in discovery is that the final price paid by the Healthcare Purchaser Plaintiffs is set by the *distributor*, not by the GPO contract.[15] Even documents to

_____

[14] *See* Macon Standing Decl. Ex. 1-F at VHA015529 ¶ 18(c) ████████████
████████████████.

[15] *See* DPP SOF ¶ 11; DPP Opp. Br. at 12 n.19; *id.* at 14 n.22.

which the Healthcare Purchaser Plaintiffs themselves point the Court's attention unambiguously state that the final price paid by the end user is set by the distributor, not by the GPO contract. *E.g.*, Macon Standing Decl. Ex. 24 at BDAF-00021028 ██████████████████████████████████████████ ████████").[16]

## CONCLUSION

The Direct Purchaser Plaintiffs request that the Court, pursuant to Fed. R. Civ. P. 52 and/or 56, make the findings contained in Paragraph 3 of the Preliminary Approval Order, so they may consummate their Settlement and bring a substantial portion of this litigation to a close.

Respectfully submitted,

Dated: March 26, 2010

/s/Peter Pearlman
Peter S. Pearlman
COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP
Park 80 Plaza West- One
Saddle Brook, NJ 07663
(201) 845-9600
psp@njlawfirm.com

---

[16] The Healthcare Purchaser Plaintiffs, essentially conceding the point, respond that such markup is "separate" or "disassociated." HPP Opp. Br. at 15, 16. But that is not the law. As previously explained to the Court, markup (whether characterized as a "service fee" or otherwise) *cannot*, as a matter of law, be decoupled from the underlying price of a product for purposes of *Illinois Brick* analysis. *See Campos v. Ticketmaster Corp.*, 140 F.3d 1166, 1171-72 (8th Cir. 1998) (citing *McCarthy v. Recordex Service, Inc.*, 80 F.3d 842, 853 n.18 (3d Cir. 1996)). *See also* BD Opp. Br. at 27-28 & n.29 (explaining *Campos*).

Bruce E. Gerstein
Noah Silverman
Joseph Opper
Elena K. Chan
Garwin Gerstein & Fisher, LLP
1501 Broadway, Suite 1416
New York, NY 10036
(212) 398-0055

John Gregory Odom
Stuart Des Roches
Andrew Kelly
Odom & Des Roches, L.L.P.
Suite 2020, Poydras Center
650 Poydras St.
New Orleans, LA 70130
(504) 522-0077

Daniel Berger
Eric Cramer
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

David P. Smith
Percy Smith & Foote, L.L.P.
720 Murray Street
P.O. Box 1632
Alexandria, LA 71309
(318) 445-4480

Kendall Zylstra
Peter Kohn
Faruqi & Faruqi, LLP
2600 Philmont Ave., Suite 324
Huntingdon Valley, PA 19006
(215) 914-2460

Linda P. Nussbaum
Cohen, Milstein, Hausfeld &
  Toll, P.L.LC.
150 East 52nd Street - 30th Floor
New York, NY 10019
(212) 836-7797

Alfred G. Yates
Gerald Rutledge
Law Offices of Alfred G.
  Yates, Jr., PC
429 Forbes Avenue
Pittsburgh, PA 15219
(412) 391-5164

Steve D. Shadowen
Hangley Aronchick Segal & Pudlin
30 North Third Street, Suite 700
Harrisburg, PA 17101-1701
Tel: (717) 364-1030
Fax: (717) 364-1020

Thomas M. Sobol
Hagens Berman Sobol
  Shapiro, LLP
One Main Street, 4th Fl.
Cambridge, MA 02142
Tel: (617) 482-3700

Adam Moskowitz
Tucker Ronzetti
Kozyak Tropin & Throckmorton, P.A.
280 Wachovia Financial Center
200 South Biscayne Blvd.
Miami, FL 33131
(305) 372-1800

Joshua P. Davis
Law Offices Of Joshua P. Davis
437 Valley Street
San Francisco, CA 94131
(415) 422-6223

Mitchell W. Berger, Esq.
Berger Singerman, P.A.
350 Las Olas, Suite 1000
Fort Lauderdale, FL 33301
Tel: (954) 525-9900
Fax: (954) 523-2872

13

David Patron
Phelps Dunbar, LLP
Canal Place 365
Canal Street, Suite 2000
New Orleans, LA 70130-6534
Tel: (504) 566-1311

Steve W. Berman
Hagens Berman Sobol
  Shapiro, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Tel: (206) 623-7292

Elizabeth A. Fegan
Hagens Berman Sobol
  Shapiro, LLP
60 West Randolph Street, Suite 200
Chicago, IL 60601
Tel: (312) 762-9237

David Boies, III
Straus & Boies, LLP
4041 University Avenue
Fairfax, VA 22030
Tel: (703) 764-8700
Fax: (703) 764-8704

Howard J. Sedran
Levin, Fishbein, Sedran &
  Berman
510 Walnut Street
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663

Michael L. Roberts
Roberts Law Firm, P.A.
P.O. Box 241790
20 Rahling Circle
Little Rock, AR 72223-1790
Tel: (501) 821-5575
Fax: (501)821-4474

Jeffrey Kodroff
John A. Macoretta
Spector, Roseman & Kodroff
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 496-0300

Kenneth G. Walsh
Straus & Boies, LLP
2 Depot Plaza
Bedford Hills, NY 10507
Tel: (914) 244-3200
Fax: (914) 244-3260

Dianne M. Nast
Erin C. Burns
Steven L. O'Donnell
Rodanast, P.C.
801 Estelle Drive
Lancaster, PA 17601
Tel: (717) 892-3000
Fax: (717) 892-1200

Daniel E. Gustafson
Gustafson Glueck, PLLC
650 Northstar
East 608 Second Avenue
South Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

14